**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **EDWIN RODRIGUEZ** | : | **CONSOLIDATED** |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | **CIVIL NO. 3:01 CV 592 (MRK)** |
| | : | |
| **CITY OF NEW HAVEN, ET AL** | : | |
| **Defendants.** | : | **APRIL 30, 2004** |
| | | |
| **STEPHEN COPPOLA** | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | **CIVIL NO. 3:01 CV 813 (MRK)** |
| | : | |
| **MELVIN WEARING, ET AL** | : | |
| **Defendants.** | : | **APRIL 30, 2004** |

<u>**JOINT MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56, Fed. R. Civ. Proc., and Rule 7 of the Local Rules of Civil Procedure, the defendants Melvin Wearing, City of New Haven, Mayor John DeStefano, Thayer Baldwin and James Horan move for the entry of summary judgment in their favor. There is no genuine dispute of any of the material facts and the defendant is entitled to judgment as a matter of law.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

1

I.    <u>**Undisputed Material Facts**</u>

"In a motion for summary judgment, the movant has the burden of showing that there are no genuine issues of material fact and that he [or it] is entitled to judgment as a matter of law." <u>Lee v. Sandberg</u>, 136 F.3d 94, 102 (2d Cir. 1997) (citation omitted).

On or about November 6, 1996, Philip Cusick was found shot to death in North Haven, Connecticut. (Rodriguez Compl., First Count, ¶9 )  After Cusick's body was discovered in North Haven, the North Haven Police Department began an investigation. (Coppola Compl., Part B, ¶7.)  The New Haven Department of Police Service (NHDPS) also investigated the Cusick murder because information came to light that Cusick was shot in New Haven.  Captain Brian Sullivan of the NHDPS assigned the plaintiff Stephen Coppola, a detective in the NHDPS, to assist in the Cusick investigation.  (Coppola Compl., Part B., ¶9, Rodriguez Compl., First Count, ¶10.)  The plaintiff Edwin Rodriguez, another detective in the NHDPS, assisted the plaintiff Stephen Coppola in the Cusick investigation.  (Rodriguez Compl., First Count, ¶11.)

In February 1998, Coppola and Rodriguez developed evidence that led to the identification of a possible witness to the Cusick murder.  (Coppola Compl, Part B., ¶10, Rodriguez Compl., First Count, ¶11.)  On February 27, 1998, Coppola took a taped statement from Reynaldo Martinez and Martinez examined photographs of potential

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

2

suspects in the Cusick murder.  (Coppola, Part B, ¶12, Rodriguez, First Count, ¶12.)  In late February or early March of 1998, Coppola and Rodriguez stated that Captain Sullivan told them to cease the Cusick investigation "per order of the Chief."  (Coppola Transcript, <u>State v. Sullivan</u>, Connecticut Superior Court, CR00-0496678, September 15, 2003, p.107, attached hereto as Exhibit A; Rodriguez Transcript, <u>State v. Sullivan</u>, Connecticut Superior Court, CR00-0496678, September 24, 2003, p. 28, attached hereto as Exhibit C.)

Both Coppola and Rodriguez state that Sullivan did not specifically name the chief that had ordered them to stop the Cusick investigation. (Coppola Transcript, <u>State v. Sullivan</u>, Connecticut Superior Court, CR00-0496678, September 16, 2003, p.130, attached hereto as Exhibit B; Exh. C, p.107)  The defendant Chief Melvin Wearing did not order Captain Sullivan to stop the NHDPS investigation into the Cusick case. (Exh. D, p.27-28.)   Wearing did not order either Coppola or Rodriguez off of the Cusick investigation, nor did he order them to keep any information from the North Haven Police Department. (Exh. D, pp. 28, 30.)  Coppola and Rodriguez stated that there was nothing preventing them from going to Chief Wearing or Assistant Chief Douglas McDonald to inquire about Sullivan's order.  (Exh. B., p. 49-50, 73, Exh. C., pp. 59-60, 97.)

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

3

After Sullivan told him to cease the investigation, Coppola placed the photographs that he showed to Martinez in his desk rather than checking them into the NHDPS property room. (Exh. B., p.26.) Rodriguez knew that Coppola had left the photographs in Coppola's desk, even though Rodriguez knew that leaving the photographs in that desk instead of turning them into the NHDPS property room was a violation of NHDPS policy. (Exh. C., pp. 102, 104.)

On or about March 7, 1998, Coppola and Rodriguez went to the State's Attorney's office in New Haven to express their concerns about the Capt. Sullivan's statement regarding the cessation of the Cusick investigation. (Exh. A, pp. 88-89; Exh. C, pp. 69-70.) Chief Wearing ordered an internal investigation into the handling of the Cusick case in April 2000. (Exh. D, pp. 51-52.) Coppola stated that the police union represented him during the Internal Affairs investigation. (Exh. B, p. 132.) On or about January 15, 2001, Chief Wearing issued two official written reprimands to Coppola and Rodriguez for failing to file evidence properly, withholding evidence and failing to report the possible illegality of the termination of the Cusick investigation to a superior officer. (Exh. E and F.)

Coppola stated that he did not know that there was a NHDPS rule regarding the personal possession of evidence, but it was common sense that police officers are supposed to submit evidence to the property room. (Exh. B, pp. 28-29.) Coppola knew

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

4

that the NHDPS had a rule that stated employees of the department shall not withhold evidence of any kind.  (Exh B., p. 29.)  Coppola admitted that he deliberately chose not to follow that rule regarding the withholding of evidence and that he lied to Internal Affairs when he said he forgot the photographs were in his desk.  (Exh. B, p. 30.)  Coppola lied during the Internal Affairs investigation because he didn't like Internal Affairs.  (Exh. B, p. 83.)

Coppola alleges in his complaint that he requested permission to apply for arrest and search warrants, but he testified under oath that he never requested permission to apply for arrest or search warrants.  (Exh. B, pp. 79-80.)  Coppola also testified under oath that Martinez never told him where the gun used in the homicide was located, even though he alleges in his complaint that the location of the gun was in Martinez's statement.  (Exh B., p. 81.)  One of the reasons why Coppola did not share what he had found regarding the Cusick investigation with the North Haven Police Department is because he wanted credit in the event he solved the murder.  (Exh. B., pp. 124-125.)

## II.     The Defendants are Entitled to Judgment as a Matter of Law

### A.     Standard for Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

5

show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. Proc.

> A party seeking summary judgment bears the burden of
> establishing that no genuine issue of material fact exists.
> Addickes v. S.H. Kress & Co., Inc., 398 U.S. 144, 157, 90
> S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).  In moving for
> summary judgment against a party who will bear the ultimate
> burden of proof at trial, the movant's burden will be satisfied
> if he can point to an absence of evidence to support an
> essential element of the nonmoving party's claim.  See, e.g.,
> Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct.
> 2548, 2552, 91 L.Ed.2d 265 (1986).

The court must "draw all factual inferences in favor of, and take all factual

assertions in the light most favorable to, the party opposing summary judgment."  Lee,

136 F.3d at 102.  "One of the principal purposes of the summary judgment rule is to

isolate and dispose of factually unsupported claims or defenses[.]"  Celotex Corp. v.

Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Once the

moving party has pointed out to the court that evidence is lacking to support a material

fact that the non-moving party will have the burden of proving at trial, the non-moving

party "may not rest upon the mere allegations or denials of his pleading but . . . must set

forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

6

> [T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

Anderson, 477 U.S. at 248.

**B.**    **The defendants did not violate C.G.S §31-51m.  (Coppola - Count One, Rodriguez - Fourth Count)**

C.G.S. §31-51m(b) provides in pertinent part, that:

> No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. No municipal employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, to a public body concerning the unethical practices, mismanagement or abuse of authority by such employer. The provisions of this subsection shall not be applicable when the employee knows that such report is false.

C.G.S. § 31-51m(c) provides the following:

> Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

7

district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court. Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal.

First, neither Coppola nor Rodriguez allege that they exhausted their administrative remedies.  There is no allegation that either plaintiff utilized the grievance procedure as set forth in the City of New Haven's Agreement  with the New Haven Police Union (attached hereto as Exhibit G.)  In Article Three of the Agreement, there is a specifically delineated grievance procedure.  (Exh. G.)  There is no indication that either plaintiff used that procedure.

It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union ... Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction.  The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. [I]t would deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

8

> grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements.

Saccardi v. Board of Education, 45 Conn.App. 712, 715-16, (1997); see Hunt v. Prior, 236 Conn. 421, 431-32 (1996)(citations omitted).

Second, there is Connecticut Superior Court law that holds "discipline," as stated in C.G.S. §31-51m is "restricted to meaning action(s) by the employer which results in [the loss of a position, a loss of wages, and/or a loss of employee benefits." See Urban v. Commissioner of Children and Families, 2001 WL 577133, *10 (Conn. Super.)(attached as Exhibit H.) "For [a] plaintiff to have a cause of action under [C.G.S. §31-51m, [he] must allege [he] (1) lost a position to which [he] could be reinstated, (2) lost wages, and/or (3) lost employee benefits." Id.

Neither Coppola nor Rodriguez lost their jobs, wages or employee benefits as a result of receiving official reprimands. Therefore, they cannot prevail against the defendants under C.G.S. §31-51m.

**C.    The defendants did not violate C.G.S. §31-51q.  (Coppola – Count Two, Rodriguez - Fourth Count)**

C.G.S. §31-51q provides as follows:

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

9

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

"In order to plead a violation of [C.G.S. §31-51q] the plaintiff must allege: (1) that [he] was exercising rights protected by the first amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that [he] was fired "on account of" [his] exercise of such rights; and (3) that [his] exercise of first amendment or equivalent state constitutional rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer." Sierra v. State, 2003 WL 22413679, *3 (Conn. Super.)(attached as Exhibit I.); Sherman v. Sedgwick James of Connecticut, Inc., 1997 WL 83714, *3 (Conn. Super)(attached as Exhibit J.)

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

10

Neither Coppola nor Rodriguez allege that their exercise of First Amendment rights did not substantially or materially interfere with their bona fide job performance or with their working relationship with their employer.  It is reasonable to state that Coppola and Rodriguez's actions in going to the State's Attorney's office to discuss the possible illegality of an order without even verifying who gave the order or the details of the order does impair the working relationship between Chief Wearing and his subordinates in the NHDPS.  Wearing issued written reprimands to Coppola and Rodriguez based on what they didn't do – putting evidence where it belonged and talking to superior officers about possible illegal orders, and as such, C.G.S 31-51q does not provide a remedy for either plaintiff in this case.

There is also a question if C.G.S §31-51q even applies to written reprimands where the employee plaintiff has not been suspended or discharged, especially if the definition of "discipline" is the same as <u>Urban</u> decision regarding C.G.S. 31-51m.  It is reasonable to assume that C.G.S. §31-51m and C.G.S. §31-51q share the same definition of the term "discipline" as the statutes are in the same section of the Connecticut General Statutes.  If so, written reprimands would not constitute "discipline" for purposes of C.G.S. §31-51q.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

11

**D.** **The defendants did not defame the plaintiff Coppola.** **(Coppola – Counts Four, Five and Six**)

The plaintiff Coppola alleges in his Second Corrected Amended Complaint that the

defendant Wearing defamed him on three occasions: in a January 12, 2001 press

release; in a January 13, 2001 press release and in the written reprimand dated January

15, 2001.  The three alleged defamatory statements common on al three dates were that

Coppola violated a general order concerning the possession of evidence, he violated

departmental rules of conduct concerning the reporting of unlawful activity and that he

withheld evidence.

A defamation action "is based on the unprivileged communication of a false

statement that tends either to harm reputation of another by lowering him in the

estimation of the community or to deter others from dealing or associating with him." See

Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27 (1995); Strada

v. Connecticut Newspapers, Inc., 193 Conn. 313, 316 (1984).  "Publication and harm to

reputation are two necessary elements of the defamation cause of action."   Miles v.

Perry, 11 Conn. App. 584, 604, n.11 (1987).

"To establish a prima facie case of defamation, the plaintiff must demonstrate that:

(1) the defendant published a defamatory statement; (2) the defamatory statement

OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN
165 Church Street, New Haven, CT 06510
Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715

12

identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." <u>Cweklinsky v. Mobil Chemical Co</u>., 267 Conn. 210, 217 (2004).  In a civil action for libel, where the protected interest is personal reputation, the rule in Connecticut is that the truth of an allegedly libelous statement of fact provides an absolute defense. <u>See</u> <u>Dacey v. Connecticut Bar Assn</u>., 170 Conn. 520, 538 (1976).  "Contrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be shown to constitute the justification."  <u>Curry v. Daly</u>, 2003 WL 22962850 (Conn. Super.)(attached as Exhibit K.)

Coppola and Rodriguez's own testimony makes clear that Wearing's statements on all three dates were true.  Coppola admitted putting the photographs in his desk for two years without putting them in the property room.  Rodriguez knew that the photographs were in Coppola's desk, even though he knew keeping the photographs there was a violation of NHDPS policy.  Further, Coppola and Rodriguez admit that they never spoke to either Chief Wearing or Assistant Chief Douglas McDonald about the order Sullivan supposedly gave them.  Rather, they went to the Connecticut State's Attorney's office to discuss Sullivan's "cease the investigation" statement and other facets of the Cusick investigation.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

13

As such, the defendant Wearing retains an absolute defense to the Coppola's three defamation causes of action in Counts Four through Six because Wearing's statements were true.

### E.  The defendant Wearing did not retaliate against the plaintiff. (Coppola– Count Seven)

"A public employee who seeks to recover on the ground that he has been disciplined because of the exercise of First Amendment rights must establish, as an initial matter, that his speech may be fairly characterized as constituting speech on a matter of public concern . . . and that that speech was at least a substantial or motivating factor in the adverse action taken by the employer." (internal quotation marks and citations omitted.)  Heil v. Santoro, 147 F.3d 103, 109 (2d Cir. 1998).

"If the employee meets these burdens, the government employer may nonetheless escape liability in either of two ways.  First, the government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities . . . and can persuade the court that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech."  (internal quotation marks omitted.)  Heil, 147 F.3d at 109.  This is known as the "Pickering balancing test." See Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Board of Education., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

14

"Second, even if there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." Heil, 147 F.3d at 110.

### 1.    The NHDPS is a quasi-military organization.

Before examining the plaintiff's First Amendment retaliation claim, it is important to distinguish the NHDPS from other employers.  "A number of courts . . . [have described] police organizations as para-military or quasi-military requiring strict discipline and uniformity of appearance." Dwen v. Barry, 483 F.2d 1126,1128 (2d Cir. 1973).  "By their very nature, police and sheriff's departments require discipline and obedience to the commands of departmental hierarchy.  Without proper internal order, it would be impossible for our law enforcement organizations to function effectively, and to maintain the requisite discipline, *esprit de corps,* and uniformity." (Emphasis in original.)  Baron v. Meloni, 556 F. Supp. 796, 800 (W.D.N.Y. 1983); aff'd, 779 F.2d 36 (2d Cir. 1985); cert. denied, 474 U.S. 1058, 106 S.Ct. 798, 88 L.Ed.2d 775 (1986).

Several other jurisdictions have recognized this principle. "Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

15

personnel regulations than an ordinary government employer." <u>Tindle v. Caudell</u>, 56 F.3d 966, 971 (8th Cir. 1995).  "A police department is a paramilitary organization that must maintain the highest degree of discipline, confidentiality, efficiency, and espirit de corps among its officers, who are the first line of defense against lawlessness.  In all paramilitary organizations, there are rules that must be followed." <u>Driebel v. City of Milwaukee</u>, 298 F.3d 622, 638-39 (7th Cir. 2002).

A police department has a strong interest "in maintaining close working relationships, mutual respect, discipline, and trust." <u>Stanley v City of Dalton</u>, 219 F.3d 1280, 1289 (11th Cir. 2000).  "Police departments, regardless of the historical origin, are 'paramilitary organizations' and the free speech rights of employees in those departments must thus be evaluated with the special character of the organization in mind." <u>Jurgensen v. Fairfax County, Va</u>., 745 F.2d 868, 880 (4th Cir. 1984).

The defendant, as the head of the NHDPS, is charged with the duty of disciplining police personnel under his command and he is entitled to deference in the manner in which he performs that duty.

### 2. The plaintiffs' statements to the State's Attorney were matters of public concern.

Speech on a matter of public concern "is that which can be fairly considered as relating to any matter of political, social, or other concern to the community." <u>Connick</u>,

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

16

461 U.S. at 146, 103 S.Ct. at 1684.  "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Connick, 461 U.S. at 147-148 and n. 7, 103 S.Ct. at 1684.  The defendants concede that the plaintiff's conversations with the State's Attorney's office involved matters of public concern.

>    **3.    If any of the plaintiff's speech was protected, that speech was not the substantial or motivating factor in the adverse employment action.**

The plaintiff will not be able to show that his protected speech was the substantial or motivating factor for his suspension.  Both Coppola and Rodriguez admitted that photographs were left in Coppola's desk for two years when they should have been placed in the property room.  They both admit that they did not speak to a superior officer regarding the propriety of Sullivan order.  Those two factors were the reasons for their reprimands.  This case is not about what Coppola and Rodriguez did, it's about what they didn't do: enter evidence into the property room and speak to a superior officer regarding the legality of Sullivan's order.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

17

### 4.    The <u>Pickering</u> balancing test favors the defendant.

"[I]n evaluating the validity of a restraint on government employee speech, courts must arrive at a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." <u>Pickering</u>, 391 U.S. at 568, 88 S.Ct. at 1731.  "This balancing of interests, commonly known as the <u>Pickering</u> balancing test, presents a question of law for the court to resolve."  <u>Lewis,</u> 165 F.3d at 161-62.

"We have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." <u>Pickering</u>, 391 U.S. at 570-573, 88 S.Ct. at 1735-1737.  "[R]egardless of the content of the speech, the responsibilities of the employee, or the context in which the speech was made, an employer is never required to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." <u>Connick</u>, 461 U.S. at 152, 103 S.Ct. 1684;

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

18

> To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs. This includes the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency.

Connick, 461 U.S. at 151, 103 S.Ct. at 1692.

For example, the Pickering balance is more likely to favor the government when an employee directly confronts his supervisor with objectionable language than when an employee engages in equivalent speech on his own time and not in front of co-workers. See Connick, 461 U.S. at 152- 53 & n. 13, 103 S.Ct. 1684.  The defendant in this case needs to show only a "likely interference" with its operations, and "not an actual disruption."  Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir. 1995); see Waters v. Churchill, 511 U.S. 661, 673-74, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994) (plurality opinion) (holding court gives substantial weight to government employers' reasonable predictions of disruption caused by employee speech).

"A government official may take an unfavorable employment action against an employee for speech--even on a matter of public concern--where the speech has the potential to disrupt the work environment."  Heil,  147 F.3d at 108.  Coppola and Rodriguez's conduct was contrary to the regular operation of the paramilitary NHDPS.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

19

Without question, that type of conduct impairs working relationships and disrupts the operation of the NHDPS. The defendant Wearing is entitled to deference in disciplining the plaintiffs for what he observed as violations of NHDPS policy. His efficient operation of the paramilitary NHDPS far outweighs any protected speech in this case. As such, the Pickering balancing test favors the defendants and the plaintiffs' retaliation claims must fail.

> **5.     The defendant would have taken the same adverse employment action even in the absence of any protected speech.**

An employee who engages in unprotected conduct cannot escape "discipline for that conduct by the fact that it was related to protected conduct." Heil, 147 F.3d at 110 (2d Cir. 1998). Coppola and Rodriguez admit that they failed to turn the photographs into the property room and that they did not speak to any superior officer regarding the propriety of Sullivan's order. Wearing's actions are separate from the plaintiffs' actions in speaking to the State's Attorney after Sullivan allegedly told them to cease the Cusick investigation. To sum, any retaliation claims under the First Amendment are without merit.

> **F.     The individual defendants, acting in their individual capacity, did not violate 42 U.S.C. §1983, the Fourth, Fifth, Sixth or Fourteenth Amendments. (Coppola – Count Eight, Rodriguez – First Count)**

Title 42 of United States Code §1983 provides in relevant part:

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

20

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 402-03, 117 S. Ct. 1382, 1387, 137 L.Ed.2d 626 (1997).

Coppola and Rodriguez combine their 42 U.S.C. § 1983 claims against individual defendants with various constitutional claims, as follows.

### 1.    Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. v. Davis, 326 F.3d 361, 365 (2d Cir. 2003) "The Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous.  So the first step in any Fourth Amendment claim or, as in this case, any [42 U.S.C. §1983] claim predicated on the Fourth Amendment is to determine whether there has been a constitutionally cognizable seizure." Mederios v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998)

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

21

Neither Coppola nor Rodriguez truly articulate their claims of Fourth Amendment violations. Coppola's complaint contains no specific Fourth Amendment violation; while Rodriguez alleges that the defendants violated his privacy under the Fourth Amendment. However, Rodriguez points to no specific facts to suggest that any defendant intruded on his right to privacy. As such, the Fourth Amendment claims are insufficient as a matter of law.

### 2.    Fifth Amendment

"A [42 U.S.C. §1983] action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding." DeShawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir.1998).

Coppola has not alleged that anything he said during the internal affairs investigation was used against him in a criminal proceeding. Further, Coppola testified that his union representative was at the investigation hearing. Besides the legal conclusions set forth in his complaint, there is no evidence that Coppola's Fifth Amendment rights were violated.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

22

### 3.     Sixth Amendment

In general, the Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated against an accused by way of formal charge, preliminary hearing, indictment, information or arraignment."  U.S. v. Gouveia, 467 U.S. 180, 187-88, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (quotation omitted).

The Sixth Amendment requires the state to provide an attorney in two instances: at any critical stage in a criminal prosecution, and when a person has requested counsel in the face of deliberate attempts by police to obtain an incriminating statement.  See Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).

There are no facts in Coppola's complaint to suggest that adversary judicial proceedings were initiated nor that Coppola was ever "an accused" for Sixth Amendment purposes.  Additionally, Coppola stated that he had union representation at the internal affairs investigation.  There is no Sixth Amendment violation in this case.

### 4.     Fourteenth Amendment

The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that "no State shall make or enforce any law which shall abridge the

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

23

privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"Substantive due process is an outer limit on the legitimacy of governmental action." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). The United States Supreme Court has noted that it "has always been reluctant to expand the concept of substantive due process because guideposts for rational decisionmaking in this uncharted area are scarce and open ended." Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). See also Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807 (1994). Substantive due process is reserved not for merely unwise or erroneous governmental decisions, but for egregious abuses of governmental power shocking to the judicial conscience. Natale, supra, 170 F.3d at 263. "Alleged abuses of the police power are sufficiently arbitrary to rise to constitutional magnitude only when the conduct at issue shocks the conscience." (Internal quotation marks omitted.) Medeiros v. O'Connell, 150 F.3d 164, 170 (2d Cir. 1998).

There is nothing shocking to the judicial conscience about two police officers receiving written reprimands for improperly withholding photographs and failing to report

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

24

possible illegal orders to superior officers.  The substantive due process claims are utterly inadequate as a matter of law.

As to any procedural due process claims under the Fourteenth Amendment, the plaintiffs' reprimands do not implicate their constitutionally protected property interests in their occupations as police officers.  See Hunt, supra, 226 Conn. at 438 (holding a suspension with pay did not implicate a police officer's property interest in his job.) Further, the plaintiffs do not allege that they used the grievance procedure set forth in their agreement with the NHDPS.  (See Exh. G.)  The defendants did not deprive the plaintiffs of procedural due process.

Rodriguez also claims that he was denied "equal protection of the laws."  "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike." Thomas v. West Haven, 249 Conn. 385, 392 (1999), cert. denied, 528 U.S. 1187, 120 S.Ct. 1239, 146 L.Ed.2d 99 (2000).

Again, Rodriguez fails to specify how he was treated differently from any other officer in the same situation he found himself in with respect to the charges in his written reprimand.  The equal protection claim is simply a legal conclusion with no basis in fact.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

25

H.    **The defendant City of New Haven, acting in its official capacity, did not violate 42 U.S.C. §1983.** (Coppola – Count Eight, Rodriguez – Second Count)

> A municipality may not be held liable under 42 U.S.C. § 1983 for the alleged constitutional violations of its employees below the policy-making level solely on the basis of the doctrine of respondeat superior . . . Instead, to hold a municipality liable for the actions of employees below the policy-making level, a plaintiff must establish that the moving force behind the constitutional violation was an official policy or custom of the municipality. (Citations omitted.)

McBride v. City of New Haven, 2000 WL 559087, * 6 (D. Conn. 2000)(attached as Exhibit L); see Monell v. Department of Social Services, 436 U.S. 658, 690-694, 98 S.Ct. 2018, 2035-2038, 56 L.Ed.2d 611 (1978).  "Although this rule does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).

The plaintiffs has not set forth facts regarding any official policy or custom of the City of New Haven that exists to violate constitutionally protected rights.  This case involves one particular investigation and two reprimands, one for each plaintiff.  Neither plaintiff cites any other investigations or reprimands based on similar conduct that

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

26

violated protected rights in order to demonstrate a custom or policy. There is no municipal liability for the City of New Haven or any defendant in this case acting in his official capacity.

  **I.**  **The defendants did not intentionally inflict emotional distress on the plaintiffs. (Coppola – Count Nine, Rodriquez, Third Count)**

  "In order for the plaintiff to prevail in a case for liability under ... intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id.

  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton, supra, 254 Conn. at 210-211. "Generally, the case is one in which the

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

27

recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." Id. at 211. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Id. "The rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Petyan v. Ellis, 200 Conn. 243, 254 fn.5 (1986).

In Appleton, the conduct claimed to be extreme and outrageous included: condescending comments from Appleton's employer to her fellow colleagues questioning her vision and ability to read; Appleton's employer telephoning her daughter, representing that Appleton had been acting differently and should take a few days off from work; a telephone call from Appleton's employer to the police, who came to the school and escorted Appleton out of the building to her car; Appleton undergoing two psychiatric examinations at the request of the defendant board of education; and Appleton's forced suspension that ultimately caused her to resign.

The Appleton court held "these occurrences may very well have been distressing and hurtful to the plaintiff.  They do not, however, constitute extreme and outrageous

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

28

conduct . . ." <u>Appleton</u>, supra, 254 Conn. at 211.  "In fact, this court has noted that it is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort."  (Internal quotation omitted.)  <u>Id</u>. at 211-12.

Similarly, in <u>Dollard v. Board of Education</u>, 63 Conn. App. 550 (2001), the court held that the alleged conduct did not constitute extreme or outrageous behavior to support a claim of intentional infliction of emotional distress.  Plaintiff, employed as a school psychologist by the Orange board of education, alleged that her supervisors jointly engaged in a concerted effort to force plaintiff to resign from her position or to become so distraught that they would have a colorable basis for terminating her employment. Specifically, the defendants transferred the plaintiff to a school where she did not want to be assigned, publicly admonished the plaintiff for chewing gum, tardiness, disorganization, and poor time management.  The defendants also placed the plaintiff under the intensive supervision of a friend of a member of the board of education.  The plaintiff alleged that the defendants' conduct forced her to resign.

Based upon the cases discussed above, it is clear that the conduct alleged by Coppola and Rodriguez is not conduct that exceeds the bounds of human decency or is utterly intolerable in a civilized community.  First, as noted above the statements in the

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

29

disciplinary memorandum were true.  Second, the Coppola and Rodriguez received written reprimands.  Neither were suspended or forced to resign.

In Appleton and Dollard, the respective plaintiffs allegedly were victims to more instances of extreme and outrageous conduct for longer periods of time and neither plaintiff was successful in establishing an intentional infliction of emotional distress claim as a matter of law.  Coppola and Rodriguez's intentional infliction of emotional distress claims should fail as well.

**J.    The individual defendants are entitled to qualified immunity for the federal causes of action.    (Coppola - Counts Seven and Eight, Rodriguez, First Count)**

"Government officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  (Internal quotation marks omitted.)  Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L.Ed.2d 818 (1999).

> Defendants will be shielded by qualified immunity unless "'[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [T]he unlawfulness must be apparent.'" McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alterations and omissions in original).

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

30

> To determine whether a particular right was clearly established at the time the defendants acted, the district court should consider "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existences of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991) (quotation omitted).

Sound Aircraft Services, Inc. v. Town of East Hampton, 192 F.3d 329, 337 (2d Cir.1999).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

It is well settled in Connecticut that the discipline of police officers involves discretionary acts as a matter of law. Hughes v. City of Hartford, 96 F.Supp.2d 114, 119 (D.Conn. 2000); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180 (1988).

> [T]here is a strong public interest in protecting public officials from the costs associated with the defense of damages actions. That interest is best served by a defense that permits insubstantial lawsuits to be quickly terminated. Second, allegations of subjective motivation might have been used to shield baseless lawsuits from summary judgment. The objective standard, in contrast, raises questions concerning the state of the law at the time of the challenged conduct -- questions that normally can be resolved on summary judgment. Third, focusing on the objective legal

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

31

> reasonableness of an official's acts, avoids the unfairness of imposing liability on a defendant who could not reasonably be expected to anticipate subsequent legal developments, nor fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.  That unfairness may be present even when the official conduct is motivated, in part, by hostility to the plaintiff.  (Citations and internal quotation marks omitted.)

Crawford-El v. Britton, 523 U.S. 574, 590-91, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Chief Wearing, Mayor Destefano, Thayer Baldwin and James Horan are entitled to qualified immunity.  There is no authority to state that giving police officers written reprimands for withholding evidence and failing to speak to superior officers about illegal orders is prohibited.  None of the defendants could have known that their conduct in the situation they confronted with respect to the plaintiffs in this case was illegal.

Applying the objective reasonableness standard, the defendants could not have known that based on the circumstances they faced, their discretionary actions were illegal.  The defendants are entitled to qualified immunity.

### K.    The defendant City of New Haven is entitled to governmental immunity for intentional acts  (Coppola – Counts One, Two and Nine, Rodriguez, Third and Fourth Counts.)

Connecticut General Statutes §52-557n(a)(2)(A) provides, in pertinent part, that, "[e]xcept as otherwise provided by law, a political subdivision of the state shall not be

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

32

liable for damages to person or property caused by acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct."

Both Coppola and Rodrgiuez claim that the defendants violated the Connecticut "whistleblower statutes" (C.G.S §§31-51m and 31-51q) and engaged in intentional infliction of emotional distress.   The defendant City of New Haven is entitled to governmental immunity pursuant to C.G.S. §52-557n(a)(2)(A) as to those two causes of action because both require intentional or wilful misconduct.

### L.     The defendant City of New Haven is not required to indemnify the plaintiff Coppola under C.G.S. §7-465.  (Coppola – Count Ten)

Count Ten of Coppola's complaint seeks indemnity from the City of New Haven for any injuries and damages under Connecticut General Statute §7-465, which provides as follows:

> Any town, city or borough...shall pay on behalf of any employee of such municipality...all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damage to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment....

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

33

Conn. Gen. Stat. §7-465.

To sustain an action against a municipality under this statute, there must be a judgment against the employee under certain prescribed conditions. <u>Kostyal v. Cass</u>, 163 Conn. 92, 97 (1972). [A]n employee who suffers a judgment can either (1) pay the judgment and request reimbursement from the municipality or (2) request the municipality to pay the judgment in his behalf. <u>Id</u>. If the defendants' motion for summary judgment is granted on Count One through Nine of Coppola's complaint, Count Ten must fail because, as <u>Kostyal</u> makes clear, there must be a judgment against an employee of the City. No such judgment would be possible if Counts One through Nine are dismissed by way of summary judgment.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the defendants move this Court to grant their joint motion for summary judgment.

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

34

THE DEFENDANTS
CITY OF NEW HAVEN, MELVIN WEARING,
MAYOR JOHN DESTEFANO, THAYER
BALDWIN AND JAMES HORAN


BY: /S/ _____
Jonathan H. Beamon
Assistant Corporation Counsel
165 Church Street
New Haven, CT 06510
Telephone (203) 946-7958
Fed. Bar. No. ct22937
E-mail: jbeamon@newhavenct.net

*OFFICE OF THE CORPORATION COUNSEL · CITY OF NEW HAVEN*
*165 Church Street, New Haven, CT 06510*
*Telephone (203) 946-7958 · Facsimile (203) 946-7942 · Juris No. 42715*

35

# C E R T I F I C A T I O N

This is to certify that a copy of the foregoing was this day mailed/delivered to the following counsel of record:

Stephen P. Del Sole, Esq.     Paul A. Morello, Jr., Esq.
Rene Gerard Martineau, Esq.    Donovan & Morello
Del Sole & Del Sole, LLP     154 West Street, Building 3
46 S. Whittlesey Ave.      Cromwell, CT  06416-2446
Wallingford, CT  06492-0310


Rosemarie Paine, Esq.      R. Edward Phillips, Esq.
Jacobs, Grudberg, Belt & Dow   Law Office of Warren Miller
350 Orange Street       One Union Plaza, Second Floor
P.O. Box 606         P.O. Box 116
New Haven, CT  06503-0606    New London, CT  06320


Thomas W. Ude, Jr., Esq.
Martin S. Echter, Esq.
Office of the Corporation Counsel
165 Church Street
New Haven, CT 06510


            _____
            Jonathan H. Beamon