# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT EDWIN RODRIGUEZ CONSOLIDATED

V. CIVIL NO.3:01CV 592 (SRU;) (1 d)

THE CITY OF NEW HAVEN, ET AL

STEPHEN COPPOLA CIVIL NO.3:01CV 813 (SRU) (1 d)

V.

I MELVIN WEARING, ET AL AUGUST 9, 2004


DEPOSITION OF EDWIN RODRIGUEZ APPEARANCES:

JACOBS, GRUDBERG, BELT & DOW, PC
Attorney for the Edwin Rodriguez
--.350 Orange Street
New Haven, Connecticut 06503 BY: ROSEMARIE PAINE, ESQ.

CORPORATION COUNSEL, CITY OF NEW HAVEN
Attorney for Defendant Melvin Wearing 165 Church Street
New Haven, Connecticut 06510 BY: JONATHAN BEAMON, ESQ.

DEL SOLE & DEL SOLE, LLP
Attorney for Wortz, Minardi and Kearney 46 South Whittlesey Avenue
Wallingford, Connecticut 06492 BY: RENE GERARD MARTINEAU, ESQ. APPEARANCES CONTINUED.

REPORTED BY:
QIANA M. BURGESS
LICENSED SHORTHAND REPORTER LICENSE NO. 327

QIANA MYLESE BURGESS, RPR, LSR
P.O. Box 3113 New Haven, Connecticut 06515 Telephone (203) 387-8398

'}!,:7!& requested a meeting. Once we got into the meetii_g~ ~l ,

because with the new information we had, we told!

Sergeant Rogers. Then we went into the office ard

aired out what we had. Like I said, each level ~e g t something new, we would tell

them and .the progre~s 0 the case how it was going. I

So once Stevey --Stevey did all the speakipg, ou know, by right, lead investigator.

So you give him he courtesy of telling the case. And once Stevey was finished,

Sullivan said immediately, "You will cease this case per the chief, and give us all

the docfmen s and everything you have on the case." So we didljl't question it. We

didn't ask why or none of that. I It was an order.

Q. And did Sullivan specify who the chief hat he was referring to was?

A .No. H e jus t s aid " the chi e f ." " Per t h ci

chief."

Q. Okay. Did you have an understanding th9t t at was --strike that. Who did you

perceive the chief

being?

A. Wearing.

Q. Okay. Did you at any point talk to Chi~f Wearing about this order?

A. No.

told us to cease the case, that was it. It was k direct order. So I felt that, you know, again, I gave them the benefit of the doubt thinking they were going to transfer all the information we developed, myself an Coppola, to North Haven. Once we were taken off the

case, I felt right there we had nothing to do with t e case.

My concern was, again, that I felt something was wrong here. I felt --I had this instinct I felt was

wrong, that I needed to speak to somebody just t~ sh w them what was going on. And the closest person I

thought was the State's Attorney's office, which was Inspector Kelly.

Q. And that was where you went to talk about your misgivings about that order?

A. That's correct.

Q. But you didn't feel it was necessary to talk to the chief himself to confirm that order?

A. The chief gave the direct order to give to Sullivan to give to us. .So why should I go to him?

Q. Did you have any evidence that the chief actually gave that order? I

A. The only evidence I had was Sullivan telling us the chief said to cease the case.

Q. All right. Did the newspaper articles that

investigation. We were witnesses. But through this whole investigation, we were considered targets. W were raped through the media, raped through the I department, okay. I can't see --we went to the State's Attorney's office. That's an extension of the ~oli e department. There's many times people went to the State's Attorney's Department to speak about oth'er things. They're an extension of the police department There's nothing wrong with that. I

As far as the photo boards, it depends on the

investigator. It's find to keep the photo boardis u il

the investigation is closed. And then you put it i 0 evidence. Wearing did the same

thing. He had two detectives, when he found out this case was bad, ta

out boxes of cases, take out signed photo boards! fro

his office. This is during this investigation. 'He ad two detectives Bashta(sic) and

Peletier and he had t em documented. So there's a double standard here. I

He had an investigation done on Wortz, okay, an

inves.tigation which showed he lied. We got a taped

statement from Wortz's CI who called the bureau which

was taped and said, "I never told Wortz about Cu-t>ick I never told him about

Tricasso. I told him aboutlthe robberies. We got a third party who's listening to 11

this. Not once me and my partner went to the papers

A. Yes. If the order came from him, if m~ ca ain

is telling me that, "Per the chief, cease this 9rde "

there's no reason for me to go to him. There's ino

reason at all for me to go to him.

MS. PAINE: You need to listen: to e question. Because I think what you're being asked.

is would you have any reason to disagree that that's what Wearing has testified to. ot

whether you agree with Wearing or not, but think the question --so listen to the ~

question. Answer only the question, okay.

BY MR. MARTINEAU:

Q. Sir, what is your --what do you anticipate Thomas Habib testifying to?

A. I think he's the head detective --I think he's Chief now in North Haven, testified

that on my behalf , I guess, that no, we never went to him but we wereiord red off the

case. But also Sullivan never went to him

and --or no one else --in the higher up ever went 0 him.

Q. All right. I'd like to just revisit a question. Sir, do you have any evidence --do

you h ve any documentation that would support a claim that Captain Kearney could have

refused to conduct an IA investigation of you and your partner, okay, if ~e w S

CERTIFICATION

I, Qiana M. Burgess, a Notary Public within and for the State of Connecticut, do hereby certify that the deposition of EDWIN RODRIGUEZ was taken before m pursuant to Notice at the offices of JACOBS, GRU BER , BELT & DOW, PC, 350 State Street, New Haven, con1ect' on August 9, 2004 at 11:25 a.m.

I further certify that the witness was firstj sw n by me to tell the truth, the whole truth, and notlhin but the truth, and was examined by counsel, and was thereupon stenographically reported by me and subsequently transcribed as hereinbefore appears.

I further certify that I am not related to t e parties hereto or their counsel, and that I am no . any way interested in the events of said cause.

Dated at New Haven, Connecticut, this ~~ y September, 2004.


Qiana M. Burgess Notary Public

License No: 327 My Commission Expires: March 31, 2009