# EXHIBIT H

DOCKET NO: CR-00 0496678-S

| | | |
|---|---|---|
| STATE OF CONNECTICUT, | : | SUPERIOR COURT |
| PLAINTIFF, | : | JUDICIAL DISTRICT OF NEW HAVEN |
| - VS - | | |
| BRIAN SULLIVAN, | : | AT NEW HAVEN |
| DEFENDANT | : | OCTOBER 2, 2003 |

BEFORE

THE HONORABLE ROBERT J. DEVLIN, JR.
JUDGE

A P P E A R A N C E S:

FOR THE STATE

JOHN BLAWIE, ESQ.
ASSISTANT STATE'S ATTORNEY

FOR THE DEFENDANT

HUGH KEEFE, ESQ.
JONATHAN H. BEAMON, ESQ.
CORPORATION COUNSEL

Transcribed by:
Linda O'Neill
For C. Bachman

The following is a continuation of the matter of State of Connecticut v Brian Sullivan, CR-00 0496678, dated October 2, 2003, Hon. Robert J. Devlin, Jr., presiding. Testimony of Melvin Wearing.

    (The preceding proceedings were not transcribed by this reporter.)

    MR. BLAWIE: State would call Melvin Wearing.

\*\*\*

The first time you ever had any reason to recall any conversation you had with Sullivan, sir, about Cusick, was in the spring of the year 2000, correct?

A   That's -- that's when the grand jury was contemplated, and that's when I launched an internal investigation into the murder of Cusick.

Q   And that's when Dearington called you?

A   And that's when Dearington called me, yes.

Q   But the first thing was Dearington?

A   That's correct, yes.

Q   Second thing was the grand jury, and the third thing was IA?

A   Yeah. That's correct.

Q   I think it was that sequence; wasn't it?

A   That -- that's the correct sequence.

Q   Okay. But in any event, you didn't have any reason in the world to recall this conversation that you had with Sullivan until the spring -- until March of the year 2000, correct?

A   That's correct.

Q   And you were trying then, in the spring of 2000, for the first time, to reconstruct a conversation, one conversation, out of thousands that you had had with Sullivan, correct?

A   Well, that's correct, yes.

Q   That took one minute or less?

A   That was important to me.

A That's right; that's correct.

Q And your job is more policy, is that right, setting policy?

A My job is essentially to make sure that the department is operating efficiently and effectively as possible.

Q Okay, okay. And, sir, you report to who, the mayor?

A The mayor is my boss, yes.

Q And the Board of Police Commissioners?

A And the Board of Police Commissioners.

Q All right, okay. So with reference to any individual case in that compilation of thousands of cases, I take it you didn't go into files and look at individual statements and photoboards and guns and ballistic evidence; fair statement?

A That's a fair statement.

Q That isn't the job of a police chief, and it wasn't your job in 1998?

A That's correct.

Q Chief Wearing, this state's attorney's investigation, you knew that it had started when some police officers in your department came over to the state's attorney's office and talked to the state's attorneys?

A That's part of it, I understand.

Q And you felt, sir, that it would have been more appropriate for those cops to talk to you?

A Or someone in --

Q   -- in the department.

A   -- in the department.

Q   If they got a problem, bring it inside and we'll deal with it?

A   That's correct.

Q   Is that right?

A   That's correct.

Q   But they didn't do that in this case; they came over here, correct?

A   That's correct.

Q   They went behind your back, correct?

THE COURT:  Object to that characterization.

THE COURT:  Objection sustained to that phraseology.

MR. KEEFE:  All right.

BY MR. KEEFE:

Q   Let me see how I can phrase this.

Instead of going to you, they came across the street and went to Michael Dearington?

A   That's correct.

Q   Michael Dearington, let me -- let me see if I understand your chain of command relationship.  He's not your boss; is he?

A   No.  He's not my boss.  But --

Q   He is this -- I don't mean to interrupt you.  But he's the head law enforcement guy in this area?

A   That's correct.

Q   As the state's attorney?

A   That's correct.

Q   But he can't tell you what hours to work or anything like that, correct?

A   That's correct. He can't.

Q   He has nothing to do with you being the chief, correct?

A   That's correct.

Q   Can't promote you, can't demote you, anything like that?

A   That's correct.

Q   And, sir, one of the problems with these police officers who came over here to him instead of going to you is that you wanted to know what was going on, correct?

A   That's correct.

Q   And they had -- you found out they had interviewed a number of police officers and you didn't know about it, correct?

A   That's correct.

Q   And you weren't there?

A   That's correct.

Q   And you wanted to be there?

A   That's correct.

Q   And they didn't invite you?

A   That, they didn't.

Q   And you find out Dearington's got this investigation going on about your department and no one told you, right?

A   That's correct.

Q   And your men are being summoned over here to give statements to Reardon without your knowledge?

A   If that's the case, that's correct.

Q   Well, that's what happened. That's what you found out?

A   Yeah.

Q   And that upset you; didn't it?

A   Well, I didn't like it.

Q   Then, Chief Wearing, finally you're invited to the party, right?

    MR. BLAWIE:   Objection to the characterization.

    MR. KEEFE:   I have a report.

BY MR. KEEFE:

Q   You're invited to Dearington's office, correct?

A   That's correct.

Q   And that was March 21, 2000; isn't that right?

A   That's correct.

Q   Of course, they had already talked to other people, correct?

A   I believe so, yes. Absolutely.

Q   Now, sir, you've been in law enforcement a lot of years, sir, and you've preformed a lot of public service for the people of this city and you've solved a lot of crimes personally, correct?

A   That's correct.

Q   And you've taken a lot of statements from a lot of

witnesses, correct?

A   That's right.

Q   And you've interviewed a lot of suspects in all kinds of crimes, homicides, rapes, burglaries, larcenies, you name it, correct?

A   Correct.

Q   Drug cases?

A   That's correct.

Q   And it's a basic tenant of interviewing a suspect, sir, not to tell him in advance what you have, correct?

A   That's correct. It's a strategy.

Q   Because you don't want them to form the answer around what evidence you already have, correct?

A   That's correct.

Q   And some people would do that, yes?

A   I would think so.

Q   You tell me what you got on me, and I will tell you why it doesn't apply to me.

A   Okay.

Q   Right? Am I right?

A   Sounds -- sounds correct.

Q   Now, when you came over here on March 21, 2000, at the invitation of the New Haven State's Attorney's office, were you summoned?

A   Yes, I was.

Q   In other words, they can't issue a subpoena but they told you to get over here?

A    That's correct.

Q    Right. And they told you, sir, that there was this statement marked as Exhibit 8, Martinez's statement, it never made it to the North Haven Police Department, correct?

A    That -- that wasn't the conversation that I had with -- with Mr. Dearington at that time.

    THE COURT:  That was not, Chief?

    THE WITNESS:  That was not.

    THE COURT:  Okay, thank you.

BY MR. KEEFE:

Q    If I show you Mr. Reardon's note of that conversation, think it might refresh your recollection?

A    It's a possibility.

    MR. KEEFE:  Let me mark this for identification.

    (Defendant's Exhibit U was marked for identification:  statement dated 3/21/00.)

BY MR. KEEFE:

Q    I show you what's been marked, Chief, as U for identification. The top paragraph pertains to the conversation on March 21, 2000, you had with Dearington and Reardon. See if that refreshes your recollection as to whether they told you that a statement existed that never made its way to the North Haven Police Department.

A    That -- it's a possibility he asked me about the statement. It's a possibility.

Q    And they also told you, sir, that Lieutenant Sullivan made a statement that the investigation was over per order

DOCKET NO. CR-00 0496678-S

| | |
|---|---|
| STATE OF CONNECTICUT, | : SUPERIOR COURT |
| PLAINTIFF, | : JUDICIAL DISTRICT |
| - VS - | OF NEW HAVEN |
| BRIAN SULLIVAN, | : AT NEW HAVEN |
| DEFENDANT | : OCTOBER 2, 2003 |

## CERTIFICATION

I hereby certify that the foregoing is a true and accurate transcription of the voice recorded proceedings in the above-entitled matter, heard before the Honorable Robert J. Devlin, Jr. Judge, New Haven, Connecticut, on the 2nd day of 2003.

Dated at New Haven, Connecticut, this 16th day of January 2004.

Linda O'Neill
Court Monitor