# EXHIBIT I

Westlaw.

Not Reported in A.2d
1994 WL 158890 (Conn.Super.)
(Cite as: 1994 WL 158890 (Conn.Super.))

Page 1

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COUR RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Danbury.

Jane TARTAGLIA, et al.
v.
Nancy MARINO, et al.

No. 31 36 96.

April 25, 1994.

MEMORANDUM OF DECISION

MORAGHAN, Judge.

*1 The plaintiffs (the singular shall include the plural), Jane Tartaglia, Christopher Tartaglia, Andrew Tartaglia and James Marino, filed a twenty-four count revised complaint seeking damages for, inter alia, emotional distress allegedly suffered as a result of a pattern of harassing acts allegedly orchestrated by Nancy Marino (hereinafter "defendant") and Daniel Kish ("Kish"). Count thirteen and counts twenty-one through twenty-four are the counts at issue.

Count thirteen is brought by James Marino against Nancy Marino, his ex-wife, and alleges intentional infliction of emotional distress. Counts twenty-one through twenty-four are brought by the plaintiffs, respectively, and allege civil conspiracy as to the defendant and Kish.

On February 22, 1994, the defendant filed a motion to strike the subject counts on the grounds that (1) the claim for intentional infliction of emotional distress is legally insufficient as it fails to allege conduct which, as a matter of law, rises to the level of extreme and outrageous conduct; and (2) the claim for civil conspiracy is legally insufficient for Connecticut does not recognize civil conspiracy as a separate and individual cause of action.

The purpose of the motion to strike is to challenge the legal sufficiency of the allegations of any complaint. *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 170. In judging the motion, it does not matter whether the party can prove the allegations at trial. *Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc.*, 39 Conn.Sup. 129, 131. The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. The sole inquiry is whether the plaintiffs' allegations, if proved, state a cause of action. *Mingachos v. CBS, Inc.*, 196 Conn. 91, 108.

Count thirteen (intentional infliction of emotional distress as to James Marino).

" 'In order for the plaintiff to prevail in a case for liability under ... [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. [Citations omitted.]' Liability for intentional infliction of emotional distress requires 'conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *DeLaurentis v. New Haven*, 220 Conn. 225, 266-267. (Citations omitted.)

In count thirteen, James Marino alleges that he was harassed by the defendant between November, 1992 and June, 1993, in one or more of the following

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1994 WL 158890 (Conn.Super.)
(Cite as: 1994 WL 158890 (Conn.Super.))

Page 2

ways:
*2 Repeatedly telephoning the Plaintiff's residence at all hours of the day or night, and hanging up without speaking.
Causing to be delivered to Plaintiff's home unsolicited food orders from neighboring food suppliers.
Causing to be delivered to Plaintiff's home unsolicited catalogues and mailings from third party vendors and medical health care providers.
Repeatedly telephoning the Plaintiff in violation of Connecticut General Statutes, Sec. 53a-183. [FN1]

> FN1. General Statutes Sec. 53a-183 provides, in part:
> A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or ... (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or harm.

(Plaintiff's Revised Complaint dated December 29, 1993, para. 83.) The plaintiff claims that the defendant's conduct was extreme and outrageous, and as a result of this conduct, the plaintiff suffered severe emotional distress. In her memorandum of law in support of her motion, the defendant, Nancy Marino, postulates that the plaintiff's allegation that the defendant's conduct was extreme and outrageous does not, as a matter of law, rise to the level of extreme conduct which would support a claim for intentional infliction of emotional distress.

The plaintiff argues in opposition that whether his allegations set forth a legally sufficient cause of action in emotional distress is not properly decided on a motion to strike, but is better left as a factual question for the jury. In the alternative, he opines that the pattern of harassment alleged in count thirteen is sufficient to satisfy the elements of an emotional distress claim.

In response to the plaintiff's first argument that "[w]hile the question of whether a defendant's conduct is sufficiently 'extreme and outrageous' is ordinarily a question of fact, it is for the court to determine, in the first instance, whether the defendant's conduct may be regarded as so extreme and outrageous as to permit recovery." *Settembri v. AM. Radio Delay League*, 7 CSCR 483 (March 27, 1992, Schaller, J.); *Mellaly v. Eastman Kodak Co.*, 42 Conn.Sup. 17, 19 (Berdon, J.); *Giambattista v. Hartford Courant*, 3 CSCR 89, 90 (November 23, 1987, Gill, J.); *Chipokas v. Heritage Savings & Loan Association, Inc.*, 2 CSCR 895, 896 (July 21, 1987, Kulawiz, J.).

In speaking to extreme and outrageous conduct, our courts have noted that:

> It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

*McGrath v. The Yale Corporation*, Superior Court, Judicial District of New Haven at New Haven, No. 326144 (May 17, 1993, Thompson, J.), quoting 1 Restatement (Second), Torts, Sec. 46, comment d.
In addition, insults, indignities, or annoyances do not constitute extreme and outrageous behavior. *Brown v. Ellis*, 40 Conn.Sup. 165, 167. The plaintiff's allegations as contained in the thirteenth count of the revised complaint do not rise to the level of conduct so "extreme and outrageous" so as to support a cause of action for intentional infliction of emotional distress.

*3 The plaintiff has invited the court's attention to the fact specific case of *MacLauchlin v. O'Connor*, Judicial District of Tolland at Rockville, No. 040906 (May 24, 1991, Scheinblum, J.) for the proposition that telephone calls for a mere two day period constituted the awarding of compensatory, treble, and punitive damages. In *MacLauchlin*, the court found as *proven* the fact that the defendant computer generated, at the rate of every thirty

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
1994 WL 158890 (Conn.Super.)
(Cite as: 1994 WL 158890 (Conn.Super.))

Page 3

seconds to one minute, over a total of eight hundred (800) calls to the plaintiff's home/business telephone in the space of a two day period. The court found that the plaintiff was prevented from conducting business during the time of the telephone intrusion, and accordingly awarded damages for emotional distress. In the present case, and in distinction to the facts of *MacLauchlin*, the plaintiff has not alleged such a harassment or intrusion which would support, as a threshold matter, a cause of action based on emotional distress as a result of the alleged actions of the defendant. Count thirteen is legally insufficient, and is, therefore, stricken.

Counts twenty-one through twenty-four (civil conspiracy as to all plaintiffs).
   The contours of 'a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.'
*Marshak v. Marshak*, 226 Conn. 652, 665, quoting *Williams v. Maislen*, 116 Conn. 433, 437, 165 A. 455 (1933). However, " 'there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself.' " Id. 669, quoting *Cole v. Associated Construction Co.*, 141 Conn. 49, 54, 103 A.2d 529 (1954).

In counts twenty-one through twenty-four, the plaintiffs allege that certain acts of the defendants "objectively manifested their agreement to permit, facilitate, and perpetuate the harassment of the plaintiff with the intent to inflict emotional distress, and constituted a conspiracy whose purpose was toward that end", and that the "defendants' agreement to subject the plaintiff to harassment resulted in the Plaintiff suffering severe emotional distress."

The defendant has responded to this allegation by asserting that civil conspiracy is not a tort in and of itself, and since the plaintiffs have failed to allege any additional acts or damages arising from the alleged conspiracy which are not already recited in other counts within the complaint, the referenced counts should be stricken. Conversely, the plaintiffs assert that they have referenced the tortious acts undertaken by the defendant and have properly alleged that those acts were taken in furtherance of a conspiracy which damaged the plaintiffs.

*4 While the plaintiffs have alleged that the defendant agreed to conspire to harass the plaintiffs, they have not alleged that it was the acts committed pursuant to, and as a result of, the formed conspiracy which caused the plaintiffs' alleged emotional distress. The defendant's motion to strike counts twenty-one through twenty-four of the plaintiffs' revised complaint are, accordingly, granted.

1994 WL 158890 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COUR RULES BEFORE CITING.

Superior Court of Connecticut.

Shelly URBAN,
v.
COMMISSIONER OF CHILDREN AND FAMILIES.

No. CV000091539.

May 11, 2001.

MEMORANDUM OF DECISION Motion To Strike And Dismiss [102, 102.50]

PARKER.

*1 Plaintiff, Shelly Urban, a state employee, brings this action against the defendant, the Commissioner of the Department of Children and Families (DCF). Plaintiff makes four claims, each based on a claimed statutory violation.

Plaintiff is employed as a registered nurse at the Long Lane School. The Long Lane School is the state-run secured facility for juvenile offenders.

In the course of her duties on May 15, 1999, plaintiff observed another DCF employee, Youth Services Officer (YSO) Olardy Alicea, mistreat a school resident.

The complaint alleges:
13. YSO Alicea then assaulted the juvenile resident by placing a one-arm choke hold around the resident's neck. The resident was slammed to the floor by YSO Alicea as he continued to apply the choke hold around the resident's neck. After the resident fell to the floor, he bled from a head wound, started to choke, had difficulty breathing and then vomited profusely upon the floor.
14. YSO continued to maintain his choke hold upon the resident for one to two minutes and released the choke hold when YSO John Melly arrived within a short time.
15. Plaintiff Urban was then assigned to treat a two- to three-centimeter cut on the resident's forehead. She also noticed abrasions around the resident's neck and throat.
16. As a registered nurse, plaintiff Urban is a mandated reporter, pursuant to C.G.S. § 17a-101. Pursuant to C.G.S. § 17a-101b, plaintiff Urban had reasonable cause to suspect or believe that the resident had been abused or suffered a non-accidental injury. Accordingly, plaintiff Urban reported the incident to the proper authorities and submitted a form, "DCF-136, Report of Suspected Child Abuse/Neglect."
17. Plaintiff Urban cooperated with the official DCF investigation of the matter as a material witness to the incident of child abuse. The DCF investigation was led by Human Resource Assistant Director Lynn F. Paton.
13. The results of the investigation revealed that the choke hold applied by YSO Alicea was not a DCF-approved restraint and that YSO Alicea had violated DCF policy regarding the use of restraints on residents.
19. Although YSO Alicea was suspended from his position without pay for sixty (60) days, he was returned to his position at Long Lane School following his suspension.
20. Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for *The Hartford Courant.* Complaint, February 11, 2000.

Defendant has moved to dismiss and to strike. Motion To Strike And Dismiss, May 12, 2000. [102, 102.50.]

Defendant's basis for dismissal is sovereign immunity. [FN1] Defendant moves to strike

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 2

claiming the facts alleged are not within the purview of the statutes she relies upon.

FN1. Defendant has moved to dismiss the Second, Third and Fourth Counts on the grounds of sovereign immunity. Defendant has not moved to dismiss the First Count which is based on C.G.S. § 31-51m. Defendant acknowledges § 31-51m permits this action. Memorandum of Law In Support Of Motion To Strike And Dismiss, May 12, 2000, pp. 4 and 13.[103]

## PROCEDURAL IMPROPRIETY

Defendant has improperly combined motions to dismiss and to strike in one motion. The order of pleading is fixed by rule P.B. § 10-6. A motion to dismiss is the first pleading permitted. The motion to strike is to be filed after any filed motion to dismiss has been ruled upon.

*2 The court will decide the motions. However, its doing so should not be taken as condoning the practice. [FN2]

FN2. Defendant is reminded of P.B. § 4-1 regarding pleadings which states in part: "a: the top of each page a blank space of two inches shall be reserved." Compliance with this provision facilitates the work of the court.

## MOTION TO DISMISS

The motion to dismiss is based on sovereign immunity. Defendant has properly raised this jurisdictional issue by a motion to dismiss. " '[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. (Internal quotation marks omitted.)' *Novicki v. New Haven,* 47 Conn.App. 734, 738-39, 709 A.2d 2 (1998)." *Brennan v. Fairfield,* 58 Conn.App. 191, 196 (June 13, 2000). See also, *Shay v. Rossi,* 253 Conn. 134 (2000) and, *Antinerella v. Rioux,* 229 Conn. 479 (1994).

## THE SECOND COUNT

The Second Count is predicated on C.G.S. § 17a-28(i). It provides in part:
... the name of an individual reporting child abuse or neglect shall not be disclosed without his written consent except to ...
C.G.S. § 17a-28(i). Needless to say, *The Hartford Courant* is not among the permitted exceptions.

The gist of the Second Count is plaintiff's rights were violated by the disclosure of her name to *The Hartford Courant.*

Defendant claims the state has not waived its sovereign immunity with respect to a suit based on C.G.S. § 17a-28(i).

Subsection (n) of § 17a-28 states: "Any person ... aggrieved by a violation of subsection ... (i), (j) ... may seek judicial relief in the same manner as provided in section 52-146j ..." C.C.S. § 17a-28(n).

The language of § 17a-28(n) does not contain an express waiver of sovereign immunity. *Mahoney v. Lensink,* 213 Conn. 548, 556 (1990). However, examination of the statute as a whole and its evident purpose necessarily may imply that the legislature intended to allow such an action against the state. Thus, if the very purpose of the statute would be wholly frustrated by not allowing a suit against the state, accomplishment of the statutory objective necessitates an implication the legislature intended to waive sovereign immunity.

Chapter 319 of the General Statutes relates to the establishment, mission, responsibilities, authority, and governance of DCF. Chapter 319 includes § 17a-28. The prohibitions against disclosure contained in § 17a-28 are prohibitions specifically directed at the DCF. Thus, the creation by statute of a cause of action for violation of the disclosure prohibition contained in § 17a-28 strongly implies the legislature intended that sovereign immunity would not bar a suit against the DCF.

The main purpose of § 17a-28 is the protection of persons entrusted to, or receiving services from, DCF. To that end, for example, records of those persons are made confidential. And such persons are given a right to sue if that confidentiality is

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 3

breached.

The statute specifically limits who may benefit from its right to sue provision and does so by its definition of "person."

"Person" means (A) any individual named in a record, maintained by the department, who (i) is presently or at any prior time was a ward of or committed to the commissioner for any reason; (ii) otherwise received services, voluntarily or involuntarily, from the department; or (iii) is presently or was at any prior time the subject of an investigation by the department; (B) the parent of a person, as defined in subparagraph (A) of this subdivision, if such person is a minor; or (C) the authorized representative of a person, as defined in subparagraph (A) of this subdivision, if such person is deceased.

*3 C.C.S. § 17a-28(a)(1).

Plaintiff does not allege any facts which bring her within the confines of "person" as set forth in the statute.

Thus, DCF does not have the sovereign immunity shield if sued, for example, by a Long Lane School resident for a violation of § 17a-28(j). That shield stands where the suit is brought by one, such as the plaintiff here, who is not within the statute's restricted definition of "person." It is significant that subsections (i) and (j) use the term "the name of any individual" in describing and defining the disclosure prohibition in those statutes. The term "individual" would include all "persons" as defined in § 17a-28(a)(1). There are individuals, however, who do not come within the narrow statutory "person." Plaintiff is such an individual.

Caution must be exercised when considering the abrogation of sovereign immunity.

Moreover, because such statutes are in derogation of the common law, "[a]ny statutory waiver of immunity must be narrowly construed"; Struckman v. Burns, supra; and its scope must be confined strictly to the extent the statute provides. Berger, Lehman Associates, Inc. v. State, 178 Conn. 352, 356, 422 A.2d 268 (1979) ... Owner-Operators Independent Drivers Assn. of America v. State, supra, 685. (Internal quotation marks omitted.)

Mahoney v. Lensink, 213 Conn. 548, 555-56 (1990).

The court has in mind the admonitions of the Supreme Court--

It is a matter for the legislature, not this court, to determine when our state's sovereign immunity should be waived. The question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. Rogan v. Board of Trustees, 178 Conn. 579, 582, 424 A.2d 274 (1979); Bergner v. State, 144 Conn. 282, 286-87, 130 A.2d 293 (1957). Duguay v. Hopkins, 191 Conn. 222, 228, 464 A.2d 45 (1983). Sovereign immunity may be waived only through a statute. Id. Any statutory waiver of immunity must be narrowly construed. Id. The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication. Baker v. Ives, [162 Conn. 295, 298, 294 A.2d 290 (1972) ]; Murphy v. Ives, [151 Conn. 259, 262-63, 196 A.2d 596 (1963) ]. Id." (Internal quotation marks omitted.) Struckman v. Burns, 205 Conn. 542, 558 (1987).

"It is well established that statutes in derogation of the state's immunity from suit should be strictly construed so that the state's sovereignty may not be undermined. Berger, Lehman Associates, Inc. v. State, 178 Conn. 352, 355-56, 422 A.2d 268 (1979); Spring v. Constantino, 168 Conn. 563, 570-71, 362 A.2d 871 (1975); 2A Sutherland, supra, 58.04. 'Under that rule of construction, the plaintiff must prove that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, and the contractual language upon which the plaintiff depends ...' Berger, Lehman Associates, Inc. v. State, supra, 356."

*4 DeFonce Construction Corporation v. State, 198 Conn. 185, 188, 501 A.2d 745 (1985).

"In the absence of clear legislative intent, this court will not interpret a statute as waiving the state's sovereign immunity." Struckman v. Burns, 205 Conn. 542, 559 (1987).

Because of the narrow definition of "person" contained in § 17a-28(a)(1), the court holds that the legislature has neither expressly or by necessary implication lifted the shield of sovereign immunity for this action.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 4

There are, however, recognized exceptions to sovereign immunity. For example, "[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute." *Shay v. Rossi*, 253 Conn. 134, 169 (2000).
> In those cases in which it is alleged that the defendant officer is proceeding ... in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine ... *Id.*, quoting J. Block, [*supra*, 59 Harv.L.Rev. 1080-81]. In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions ... *Horton v. Meskill, supra*, 172 Conn. 624. Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction. *Id.*

(Internal quotation marks omitted.) *Id.*

Plaintiff's specific allegations regarding the breach of § 17a-28(i) are--
> Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for *The Hartford Courant*.

Complaint, February 11, 2000, p. 6, ¶ 20.
> By the foregoing acts, omissions, circumstances and events, agents, employees and/or officials of the defendant, acting under color of state law, have violated C.G.S. § 17a-28(i) by failing to obtain the written consent of the plaintiff Urban prior to the disclosure of her name to the media as an individual who reported an incident of child abuse or neglect.

Complaint, February 11, 2000, p. 10, ¶ 31.

The question then is whether plaintiff's allegations are sufficient to bring this case "within the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." *Shay v. Rossi*, 253 Conn. 168.

Just what conduct is within the exception is far from clear. The Supreme Court has dealt with the question only twice. *Antinerella v. Rioux*, 229 Conn. 479 (1994); and, *Shay v. Rossi*, Conn. 134 (2000). The Supreme Court has "never defined the precise contours of the 'in excess of statutory authority' doctrine." *Shay v. Rossi*, 253 Conn. 170. It "ha[s] never decided just how far outside that statutory authority the official must act in order for the doctrine to apply." *Id.*

*5 In *Antinerella*, the Supreme Court stated:
> Although we have recognized the legal principle that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority, we have never had occasion actually to apply that doctrine. This case presents the first opportunity to do so.

*Antinerella v. Rioux*, 229 Conn. 479, 489 (1994).

Regarding *Antinerella*, the Supreme Court stated:
> *Antinerella v. Rioux, supra*, 229 Conn. 489, was the first case in which we were called upon actually to apply the doctrine that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority ... In that case, we concluded that allegations that the defendant, the high sheriff of Hartford county, had discharged the plaintiff, a deputy sheriff, in order to take his business and personally benefit under the statutorily forbidden and illegal fee splitting arrangements he had made with several appointed deputy sheriffs, were sufficient to constitute an action in excess of the defendant's statutory authority to discharge the plaintiff under the at-will employee doctrine. *Id.*, 491. Important to that conclusion, moreover, was the notion that the defendant's alleged conduct contravened the clear public policy that a high sheriff may not engage in fee splitting, as reflected in General Statutes §§ 6-36 and 6-46. *Id.*, 493.

*Shay v. Rossi*, 253 Conn. 169-70 (footnotes and internal quotation marks omitted).

In discussing whether sovereign immunity protected High Sheriff Rioux, the Supreme Court stated:
> When, however, the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 5

provide immunity from suit.
*Antinerella v. Rioux,* 229 Conn. 497.
> By our decision we do not chip away at the doctrine, relax its parameters or expand any well developed exceptions. Rather than rely on any exception to the rule, we hold simply that the doctrine does not apply when there is a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.

*Id.*

These two Supreme Court statements in *Antinerella* are important and illustrative of the beginnings of the Connecticut scope of "the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." *Shay v. Rossi,* 253 Conn. 168.

The second and latest case regarding the exception is *Shay v. Rossi,* 253 Conn. 134 (2000). In that case, the plaintiffs alleged DCF initiated and pursued child abuse and neglect proceedings against the Shay parents based on DCF's suspicions of child abuse and neglect. Well after DCF knew their suspicions were mistaken, and had reliable and convincing information of the error, DCF continued and persisted in their efforts to remove the children from their parents' home and care and to otherwise interfere with the parents' and the children's lives.

*6 The Supreme Court stated:
> In this respect, the critical factual allegations in the plaintiffs' complaint are that: (1) the neglect and abuse petitions were filed without probable cause and in the face of overwhelming evidence of the absence of abuse and neglect; (2) the defendants' refusal to withdraw the petitions and their insistence that Stephen Shay undergo in-home supervision and counseling were contrary to the evidence in the record and the advice of department staff; and (3) the defendants' conclusion that neglect and abuse of the Shay children had been confirmed was without foundation, unreasonable, arbitrary, willful, wanton, reckless and malicious, and "designed to vindicate and legiti[mize] their handling of the Shay case which was, from the outset, unlawful, uncaring, and unnecessary." (Emphasis added.) These allegations, including the last allegation in particular, read broadly in the plaintiffs' favor, as they must be; *Bohan v. Last,* 236 Conn. 670, 674, 674 A.2d 839 (1996); charge the defendants with improper and self-serving motives in filing the neglect and abuse petitions, in pursuing them for as long as they did, and in pursuing the in-home supervision of the family for as long as they did. The improper and self-serving motives that could be proven under these factual allegations were that, by the time that the petitions were filed and by the time that the in-home supervision was ordered to continue, the defendants knew that these actions were legally and factually unjustified; that the defendants filed the petitions knowing that they were unwarranted; and that they nonetheless pursued the petitions and the in-home supervision of the family, not for the statutory purpose of protecting any of the Shay children, but in order to justify those prior unjustified actions. In *Antinerella v. Rioux, supra,* 229 Conn. 497, we stated that when "the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." Similarly, if the defendants here acted solely in order to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted, there would be no reason to provide immunity from suit.

*Shay v. Rossi,* 253 Conn. 173 (footnote omitted).

The Supreme Court concluded:
> We agree with the defendants, however, that in order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations. The plaintiffs' allegations are reasonably supportable by the following facts in the record.

[Footnote omitted.] *Id.,* 174-75.

The Court then summarized what facts could have been proven under the Complaint.
> The totality of these facts, if proven, would permit a fact finder to infer that the defendants filed the neglect and abuse petitions knowing that they were unjustified, and continued them with that knowledge, that they continued the in-home supervision of the Shay family beyond the time

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 6

that they knew was justified, and that they did so, not for the statutory purpose of protection of the children, but to justify their prior unjustified actions. These inferences would be sufficient to establish that the defendants' conduct was sufficiently egregious as to constitute conduct that was in excess of their statutory authority.
*7 *Shay v. Rossi*, 253 Conn. 180.

Having *Shay* and *Antinerella* in mind, the court compares the allegations made by plaintiff to those which have been found sufficient to be "within the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." *Shay v. Rossi*, 253 Conn. 168.

Plaintiff's specific allegations regarding the breach of C.G.S. § 17a-28(i) are--
  Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for *The Hartford Courant*.
Complaint, February 11, 2000, p. 6, ¶ 20.
  By the foregoing acts, omissions, circumstances and events, agents, employees and/or officials of the defendant, acting under color of state law, have violated C.C.S. § 17a-28(i) by failing to obtain the written consent of the plaintiff Urban prior to the disclosure of her name to the media as an individual who reported an incident of child abuse or neglect.
Complaint, February 11, 2000, p. 10, ¶ 31.

*Shay* states quite specifically--
  We agree with the defendants, however, that in order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations.
*Shay v. Rossi*, 174-75.

Plaintiff does not allege *in ipsis verbis* that the defendant "acted in excess of its statutory authority." Plaintiff does allege that disclosure of her identity was prohibited by statute. In one sense, her allegation fairly implies the disclosure was unauthorized and that defendant acted in excess of its statutory authority. Does the conduct alleged by the plaintiff trigger the exception?

When discussing the line between merely tortious conduct and that which is "in excess of statutory authority," the Supreme Court stated:
  We do not agree, however, with the suggestion inherent in those authorities, precisely for the reason given by the defendants, namely, that the doctrine of sovereign immunity would be too easily overcome. It would mean, for example, that any tort committed by a state official would not be subject to sovereign immunity, because it could hardly be contended that any such official was statutorily authorized to commit a tort.
*Shay v. Rossi*, 172.

Defendant's conduct as alleged was prohibited by statute and therefore unauthorized. But the Supreme Court has rejected the idea "that all it takes to trigger the [in excess of statutory authority exception to sovereign immunity] doctrine is to establish, by a process of statutory interpretation, that the defendants' conduct was unauthorized." [Footnote omitted.] *Shay v. Rossi*, 253 Conn. 171. Prohibited conduct does not necessarily trigger the exception.

Furthermore, there is no allegation defendant acted "solely to further his or her own illegal scheme and not to carry out government policy". *Antinerella v. Rioux*, 229 Conn. 497. Nor is here any "allegation of wrongful conduct to promote an illegal purpose in excess of the officer's authority." *Id.* Nor are there allegations "of improper motives on the part of the defendants." *Shay v. Rossi*, 253 Conn. 177. There are no allegations akin to those in *Shay* that defendant acted knowing the actions "were unjustified" or that defendant acted "not for the statutory purpose of protection of the children, but to justify their prior unjustified actions." *Shay v. Rossi*, 253 Conn. 180.

*8 Plaintiff's allegations do not attribute any improper motive or purpose to DCF or its Director of Communications when he disclosed her identity and the details of the incident to *The Hartford Courant*. Complaint, February 11, 2000, p. 6, § 21. [FN3]

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 7

FN3. In her First Count, plaintiff alleges that some DCF personnel "have intentionally and willfully embarked on a course of conduct specifically designed to discipline, penalize or retaliate against the plaintiff for her protected activity of reporting the incident of child abuse, challenging the unauthorized disclosure of her identity to the media by DCF and her cooperating with the DCF investigation of the incident as material witness." Complaint, February 11, 2000, p. 8, ¶ 27. These allegations are directed to conduct which occurred after the disclosure of her identity to the media. Therefore, by these allegations plaintiff has not attributed any improper motive or purpose to DCF or any of its personnel for the disclosure of her identity.

The conduct of the defendant as alleged by the plaintiff is not so far outside DCF's authority as to invoke the "in excess of statutory authority" exception to sovereign immunity.

The cause of action alleged in the Second Count is one for which the state is shielded by sovereign immunity.

Section 17a-28(a)(1) does not expressly or by necessary implication abrogate sovereign immunity for the Second Count.

The court holds that the allegations of the Second Count do not bring it within the "acting in excess of statutory authority" exception to the sovereign immunity doctrine.

The Second Count is dismissed for lack of subject matter jurisdiction.

THE THIRD COUNT

The Third Count is predicated on C.G.S. § 17a-18(j). It provides in part:
... the name of any individual who cooperates with an investigation of a report of child abuse or neglect shall be kept confidential upon request ...
C.G.S. § 17a-18 (j).

The gist of the Third Count is that DCF violated the plaintiff's rights by disclosing her name to *The Hartford Courant*.

Defendant claims the State has not waived its sovereign immunity with respect to a suit based on C.G.S. § 17a-28(j).

The reasons, authorities, and rationale discussed and considered in connection with the Second Count apply equally to the Third Count.

Section 17a-28(j) does not expressly or by necessary implication abrogate sovereign immunity for the Second Count. Moreover, the allegations in the Third Count do not bring it within the "acting in excess of statutory authority exception" to the sovereign immunity doctrine.

The Third Count is dismissed for lack of subject matter jurisdiction.

THE FOURTH COUNT

The Fourth Count is predicated on C.G.S. § 17a-101(a). Plaintiff relies upon this language from that section:
The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect ... and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.
C.G.S. § 17a-101(a).

The Supreme Court has described the scope of § 17-38a(a), the immediate precursor of § 17a-101(a), and which contained the very language plaintiff relies upon.
This general statement of the goals of our child welfare laws, although valuable as an aid in construing ambiguous provisions of such statutes, creates no rights beyond those specifically provided by the statutes intended to implement that statement of policy. See *Black v. Beame*, 550 F.2d 815, 817 (2d Cir.1977).
*Savage v. Aronson*, 214 Conn. 256, 280, n. 25 (1990).

*9 Although plaintiff's reliance on § 17a-101(a) as

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 8

the basis of a cause of action is misplaced, strictly speaking, that is a proper ground for a motion to strike and not a ground for a motion to dismiss. However, in so far as plaintiff predicates a cause of action on § 17a-101(a), it is subject to dismissal if sovereign immunity applies.

There is no basis for a waiver of sovereign immunity, either express or by force of necessary implication in the statute. For the reasons discussed and relied upon above regarding the Second Count, there is no basis for invoking the "in excess of statutory authority exception."

The Fourth Count is dismissed for lack of subject matter jurisdiction.

## MOTION TO STRIKE

Defendant has moved "to strike the plaintiff's complaint. The defendant maintains that each and every count of the complaint is insufficient as a matter of law." Motion To Strike And Dismiss, May 12, 2000. [102,102.50]

Counts Two, Three, and Four have been dismissed. Therefore the court can only decide the motion to strike as it relates to the First Count.

The First Count is based upon C.G.S. § 31-51m, the so-called whistle blower statute. It states:
 (b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action
...
C.C.S. § 31-51m. In her First Count, plaintiff alleges that the defendant has--
 intentionally and willfully embarked on a course of conduct specifically designed to discipline, penalize or retaliate against the plaintiff for her protected activity of reporting the incident of child abuse, challenging the unauthorized disclosure of her identity to the media by DCF and her cooperating with the DCF investigation

of the incident as a material witness.
Complaint, February 11, 2000, p. 8, ¶ 27.

Defendant claims--
 To get relief under the whistle blower statute, the plaintiff must establish that she was "discharged, disciplined or otherwise penalized by her employer" (DCF). She has not alleged that she was fired, demoted, disciplined or even deprived of some benefit of her employment. The essence of the plaintiff's allegations is that her employer, DCF, improperly released her name to the press and that her fellow employees, upon learning of her reporting the incident, engaged in behavior that she contends constituted harassment.
Memorandum of Law in Support of Motion to Strike and Dismiss, May 12, 2000, p. 6.[103]

Has plaintiff alleged she was "discharged, disciplined or otherwise penalized" by her employer within the meaning of § 31-51m? She does not allege she was discharged. But has she alleged she was disciplined or otherwise penalized? There are no definitions as such in the statute for "disciplined" or "otherwise penalized."

*10 Another subsection of the statute states:
 (c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorneys fees to be taxed by the court.
C.C.S. § 31-51m(c).

By limiting the judicial relief afforded, the statute informs on just what "disciplined" and "otherwise penalized" mean. Thus, "disciplined" and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 577133 (Conn.Super.)
(Cite as: 2001 WL 577133 (Conn.Super.))

Page 9

"otherwise penalized" must correlate with the permitted relief. These terms must mean something for which reinstatement, payment of back wages, and/or reestablishment of employee benefits would be a meaningful recompense. "Disciplined" and "otherwise penalized" are restricted to meaning action(s) by the employer which results in [the loss of a position, a loss of wages, and/or a loss of employee benefits.

For plaintiff to have a cause of action under § 31-51m, she must allege she (1) lost a position to which she could be reinstated, (2) lost wages, and/or (3) lost employee benefits. Plaintiff has made no such allegations.

As to what she has suffered and which she asks damages for, plaintiff's complaint alleges:
   As a direct and proximate result of the defendant's actions and omissions described above, plaintiff Urban suffers and will continue to suffer:
   a. Loss of marital relations, requiring professional counseling;
   b. Loss of sleep and nightmares;
   c. Feelings of paranoia;
   d. Feelings of extreme anxiety and stress;
   e. Fear for her personal safety and the safety of her unborn child;
   f. Inability to take prescribed medication due to her pregnancy for such mental, physical and emotional distress;
   g. Unreasonable intrusion upon her seclusion;
   h. Damage to her reputation;
   i. Loss of self-esteem.
Complaint, February 11, 2000, p. 9, ¶ 29.

Plaintiff has not alleged she was demoted or transferred to another position. She has not alleged she has suffered any loss of pay. She has not alleged the loss of any employee benefits. Plaintiff has not alleged a cause of action under § 31-51m. And, plaintiff has not alleged any loss for which the statute affords a remedy.

Plaintiff makes some claim that she could recover, according to the statute, reasonable attorneys fees. The short answer to that claim is that she would have to be the "prevailing party." In view of the court's disposition of the motion to strike, plaintiff has not made any allegations that would make her the "prevailing party."

*11 The First Count does not allege a claim upon which relief can be granted and the motion to strike the First Count is granted.

SUMMARY

The motion to dismiss is granted as to the Second, Third, and Fourth Counts.

The motion to strike the First Count is granted.

2001 WL 577133 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.