## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWIN RODRIGUEZ | : CONSOLIDATED |
| | : CIVIL NO. 3:01CV 592 (MRK) |
| | :     (lead) |
| V. | : |
| | : |
| THE CITY OF NEW HAVEN, ET AL | : |
| | |
| STEPHEN COPPOLA | : CIVIL NO. 3:01CV 813 (MRK) |
| | :     (member) |
| | : |
| V. | : |
| | : |
| MELVIN WEARING, ET AL | : September 26, 2004 |

### PLAINTIFF COPPOLA'S Local Rule 56(a)2 Statement

Pursuant to Local Rule of Civil Procedure 56 the plaintiff Stephen Coppola respectfully offers the following undisputed material facts and disputed material facts in response to the defendants' Joint Local 56(a)1 statement, dated April 30, 2004:

Paragraphs 1 through and including 10 are admitted as true.

Paragraphs 11 is denied.

Paragraphs 12 and 13 are admitted as true.

Paragraphs 14 through and including 16 are denied.

Paragraphs 17 through and including 23 are admitted as true.

Paragraph 24 is denied.

Paragraphs 25 through and including 27 are admitted as true.

Paragraph 28 is denied.

Paragraphs 29 through and including 31 are admitted as true.

In response to the defendants' Local Rule 56(a)1 statement dated May 13, 2004:

Paragraphs 32 through and including 34 are admitted as true.

Paragraphs 35 and 36 are denied.

Paragraphs 37 through and including 40 are admitted as true.

Plaintiff Coppola's

DISPUTED ISSUES OF MATERIAL FACT

1. The defendant Melvin Wearing ordered Bryan Sullivan to stop the Cusick homicide investigation. (Affidavit of Bryan Kearney and attached Exhibit A, Final Report dated January 4, 2001 on page 26).

2. The plaintiff Stephen Coppola held back information from Internal Affairs investigators under instructions from the State's Attorney's Office. (Affidavit of Stephen Coppola).

3. In February, 1998 the plaintiff, Stephen Coppola, through an

        informant, learned of the identity of a witness to the Cusick murder and so advised Captain Sullivan who thereupon instructed the plaintiff to proceed with his investigation. (Affidavit of Stephen Coppola).

4. In accordance with the common practice of the New Haven Police Investigative Services Department, the plaintiff thereafter kept the photo board in his desk for safekeeping. (Affidavit of Stephen Coppola).

5. Following applicable department policy, the plaintiff also signed the taped statement of Reynaldo Martinez into the Police Department Evidence Locker and requested that the tape be transcribed. (Affidavit of Stephen Coppola).

6. Subsequently at a meeting with Sgt. Derek Rodgers, Captain Brian Sullivan and Sgt. Edward Kendall the plaintiff made them all aware of the specific content of the Martinez statement and its significance to the Cusick murder investigation. (Affidavit of Stephen Coppola).

7. At that meeting, Captain Sullivan advised the plaintiff to stop his investigation "per order of the Chief." (Affidavit of Stephen Coppola).

8. Sullivan identified the Chief he meant was Melvin Wearing. (Affidavit of Bryan Kearney and attached Exhibit A, Final Report dated January 4, 2001 on pages 26).

9. In accordance with that order the plaintiff ceased working on the Cusick murder investigation. (Affidavit of Stephen Coppola).

10. The plaintiff, Stephen Coppola, knew of no prior instance when a murder investigation was stopped, and he knew of no possible reason to justify terminating his investigation of the Cusick murder. (Affidavit of Stephen Coppola).

11. As a result of his concerns, within two days thereafter, the plaintiff reported his concerns to Inspector Dennis Kelly of the Office of the State's Attorney in New Haven who advised him to continue to follow orders and to obtain and retain copies of all pertinent documentation regarding the Cusick murder. (Affidavit of Stephen Coppola).

12. Keith Wortz also reported to the State's Attorney's Office a conversation he had with Capt. Sullivan wherein he was told by Sullivan to stop any further inquiry into the Cusick homicide. (Deposition of Keith Wortz).

13. According to Wortz, Capt. Sullivan told him that Chief of Police

        Nicholas Pastore's wanted to keep the Cusick homicide from "coming back to New Haven." (Deposition of Keith Wortz).

14. According to Wortz, Capt. Sullivan warned him not to take any further action regarding the Cusick homicide or he would no longer be a New Haven Police Officer. (Deposition of Keith Wortz).

15. Wortz testified that when he notified the defendant Wearing of his concerns, after being instructed to do so by an Assistant State's Attorney, regarding the discontinuance of the Cusick murder investigation, the defendant Wearing told him "I (Wearing) am fully aware of everything going on" and "to stay the fuck out of my office, do your job and only your job, the job we assigned you to." (Deposition of Keith Wortz).

16. When the plaintiff, Stephen Coppola later attempted to retrieve the tape and the original transcript of the Reynaldo Martinez statement, he discovered that both were missing from the evidence locker. (Affidavit of Stephen Coppola).

17. He subsequently became aware that both the tape and the original transcript of Reynaldo Martinez's statement were in the locked desk drawer of Sgt. Edward Kendall who told the plaintiff

        that he had the original statement delivered to him because he wanted to review it. (Affidavit of Stephen Coppola).

18. The plaintiff obtained the original transcript from Kendall and made two copies of it, placed them in his desk drawer and returned the original transcribed statement to Sgt. Kendall. (Affidavit of Stephen Coppola).

19. Subsequently, the plaintiff was interviewed and gave a statement to Inspector Tim Reardon of the Office of the State's Attorney in New Haven of his involvement in the Cusick murder investigation. (Affidavit of Stephen Coppola).

20. The New Haven State's Attorney, Michael Dearington, later summoned the defendant Wearing to his office and expressed his concerns regarding the termination of the Cusick homicide investigation. (Deposition of John Mindardi).

21. Within days of this meeting, the defendant Wearing commenced an "Internal Affairs" investigation into the handling of the Cusick homicide investigation. (Deposition of John Mindardi).

22. The defendant Wearing was then already under scrutiny by the local media for alleged cover-ups and systemic problems within the department. (Newspaper Articles).

23. Both John Minardi and the defendant Wearing stated, during their respective depositions, that an internal investigation is limited to alleged violations of departmental rules and regulations and is not designed or authorized to probe into criminal charges. Whenever a possible crime is uncovered during an internal investigation, departmental policy requires the investigating officer to refer it to the State's Attorney's Office. (Deposition of John Minardi, page 55 and Deposition of Melvin Wearing, page 13).

24. The defendant Wearing interfered in this internal investigation by allowing Bryan Sullivan to change his sworn statement, dictating the order of people to be interviewed and demanding to review their statements before he himself would give a statement. (Deposition of John Minardi).

25. Even after he was implicated in the investigation, the defendant Wearing continued to receive updates and reports from the defendant Kearney. (Deposition of John Minardi).

26. After vigorously protesting Chief Wearing's interference, John Minardi and was removed and reassigned by the defendant Wearing four months before the investigation officially ended and a final report was submitted. (Deposition of John Minardi).

7

27. Minardi testified in his deposition that he was not surprised to hear that the defendant Wearing stopped the Cusick homicide investigation because of an earlier, similar situation wherein Minardi, then in Internal Affairs, was prevented by Wearing from pursuing an internal investigation of a Police Captain suspected of selling items that had been logged into the evidence locker. (Deposition of John Minardi).

28. Minardi, an experienced detective and investigator, testified that at that time he went to the State's Attorney's Office to report this incident and was later reassigned thereafter by Wearing. (Deposition of John Minardi).

29. The defendant Wearing, according to Minardi, used to say "After the politicians are gone, you still work for me." (Deposition of John Minardi).

30. According to Minardi, he felt compelled to go outside the department because it was the Chief of Police who was preventing the investigation from going forward, and there was no one with superior authority within the Department to whom he could complain. (Deposition of John Minardi).

31. Minardi believes that because he went outside the department to

        the State's Attorney to express his concerns, he has not been assigned to positions for positions within the department for which he is qualified and which he desires. (Deposition of John Minardi).

32.    The reprimand issued by the defendant Wearing to Coppola had already been announced and published in the local media for days before it was officially issued to Coppola. (Plaintiff's Complaint).

33.    After receiving the letter of reprimand the plaintiff was later assigned to the "cold case files" which involve old homicides that remain unsolved. (Affidavit of Stephen Coppola).

                                    THE PLAINTIFF
                                    STEPHEN COPPOLA

                          By: _____
                             R. Edward Phillips, Esquire
                             One Union Plaza, Second Floor
                             New London, CT 06320
                             (860) 444-0437
                             # CT20999

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed, on September 26, 2004 to:

Jonathan Beamon, Esquire
Office of the Corporation Counsel
City of New Haven
165 Church Street
New Haven, CT 06510

Rene Gerard Martineau, Esquire
Del Sole & Del Sole, LLP
46 South Whittlesey Avenue
P.O. Box 310
Wallingford, CT 06492

Rosemaire Paine, Esqurie
350 Orange Street
P.O. Box 606
New Haven, CT 06503

                                     R. Edward Phillips, Esquire