## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWIN RODRIGUEZ | : CONSOLIDATED |
| | : CIVIL NO. 3:01CV 592 (MRK) (lead) |
| V. | : |
| THE CITY OF NEW HAVEN, ET AL | : |
| | |
| STEPHEN COPPOLA | : CIVIL NO.3:01CV813 (MRK)(member) |
| | : |
| V. | : |
| MELVIN WEARING, ET AL | : SEPTEMBER 26, 2004 |

### PLAINTIFF COPPOLA'S THIRD AMENDED COMPLAINT

#### A. Parties

1. At all times mentioned herein the plaintiff, Stephen Coppola, was a member of the New Haven Police Department holding the rank of Detective and assigned to the Department's Investigative Services Unit where his immediate supervisors were Sgt. Derek Rogers, Sgt. Edward Kendall, and Captain Brian Sullivan;

2. At all times mentioned herein the defendant, Melvin Wearing (hereinafter referred to as "the defendant Wearing"), was the Chief of the New Haven Police Department. The defendant Wearing is sued in his individual

capacity as well as his official capacity;

3. At all times mentioned herein the defendant, Bryan Kearney (hereinafter referred to as "the defendant Kearney"), was a Captain with the New Haven Police Department assigned to the Office of Internal Values and Ethics. On or about April 19, 2000, he was charged by the defendant Wearing with the responsibility of conducting an investigation into the manner in which the New Haven Police Department handled information related to the February, 1996 homicide of one Philip Cusick. The defendant Kearney is sued in his individual capacity as well as in his official capacity;

4. At all times mentioned herein the defendant, City of New Haven, was and it is now a municipal corporation duly organized under the laws of the State of Connecticut and situated in New Haven County, Connecticut;

## B. Facts

5. On or about February 5, 1996 Philip Cusick, a North Haven resident, was shot and killed. On February 6, 1996 his body was discovered on the front lawn of his home on Poole Road in North Haven, CT. A question arose as to whether Philip Cusick was shot and killed in New Haven or North Haven and the North Haven Police Department undertook an investigation into the murder.

6. The New Haven Police Department assisted the North Haven Police Department in the investigation into Philip Cusick's murder.

7. In February 1997, Captain Brian Sullivan of the New Haven Police Department assigned the plaintiff, Stephen Coppola, to assist in the investigation of the murder of Philip Cusick.

8. In February 1998, the plaintiff, Stephen Coppola, through an informant, learned of the identity of a witness to the Cusick murder.

9. The plaintiff, Stephen Coppola, thereafter informed one of his supervisors, Sgt. Derek Rogers, of this information. Rodgers, in turn, advised Captain Sullivan and Sgt. Kendall of what the plaintiff told him. Captain Sullivan thereupon advised the plaintiff to proceed with his investigation and keep them advised.

10. Based on that authority, the plaintiff, Stephen Coppola, interviewed the witness to the murder of Philip Cusick and learned of three (3) individuals who were at the scene of the Cusick murder. On February 27, 1998 the plaintiff, Stephen Coppola, took a taped statement from Reynaldo Martinez, one of those three individuals. That statement contained a detailed account of the circumstances surrounding the Cusick murder, including the identity of the shooter. During the interview, Reynaldo Martinez also identified the shooter from a photo board, which the plaintiff had previously created and consisting of photographs of several persons. In accordance with common practice of the New Haven Police Investigative Services Department, the plaintiff kept the photo

board in his desk for safekeeping.

11. The plaintiff, Stephen Coppola, also signed the taped statement of Reynaldo Martinez into the Police Department Evidence Locker and requested that the tape be transcribed.

12. The plaintiff, Stephen Coppola, advised his supervisor, Sgt. Derek Rogers, of the existence of the Reynaldo Martinez statement. At a meeting with Sgt. Direk Rodgers, Captain Brian Sullivan and Sgt. Edward Kendall the plaintiff made them all aware of the specific content of the Martinez statement and its significance to the Cusick murder investigation.

13. At that meeting, Captain Sullivan advised the plaintiff that Chief Wearing had ordered him to stop the Cusick investigation, he therefore told the plaintiff not to take any further action. In accordance with Captain Sullivan's order, the plaintiff, Stephen Coppola, ceased working on the Cusick murder investigation. Because the only lead into the Cusick murder had been generated by the plaintiff, and because he had been ordered to terminate his work, the investigations by both New Haven and North Haven Police Departments ground to a halt even though the identity of the killer was known.

14. The plaintiff, Stephen Coppola, was concerned as to the possible reasons and motives of Captain Sullivan and/or Chief Wearing may have had for stopping the investigation and for not notifying the North Haven Police

4

Department of the information conveyed by the plaintiff. Within two days thereafter, the plaintiff reported his concerns regarding the propriety of the order to stop the Cusick investigation to Inspector Dennis Kelly of the Office of the State's Attorney in New Haven. Inspector Kelly advised him to follow orders and to obtain and retain copies of all pertinent documentation.

15. When the plaintiff later attempted to retrieve the tape and the original transcript of the Reynaldo Martinez statement, he discovered that both were missing from the evidence locker. He later became aware that both the tape and the original transcript were in the locked desk drawer of Sgt. Edward Kendall who told the plaintiff that he had the original statement delivered to him because he wanted to review it. The plaintiff made two copies of the transcribed statement of Reynaldo Martinez, placed them in his desk drawer and returned the original transcribed statement to Sgt. Kendall.

16. Subsequently, the plaintiff, Stephen Coppola, was interviewed and gave a statement to Inspector Tim Reardon of the Office of the State's Attorney in New Haven providing the details of his involvement in the discontinued Cusick murder investigation;

17. After the defendant Wearing became aware of the State's Attorney's involvement, he commenced an Internal Affairs investigation with the intent to deflect criticism of his own involvement and place the blame for the

discontinuance of the Cusick murder investigation on the plaintiff Stephen Coppola. The defendant Wearing selected the defendant Kearney and John Minardi to conduct that internal investigation which was designed to find the plaintiff at fault for the discontinuance of the Cusick murder investigation and the failure of the New Haven Police Department to give the North Haven Police Department information it had discovered relating to the murder of Philip Cusick.

18. After interviewing numerous witnesses, the defendant Kearney prepared and submitted a sixty-nine (69) page report to the defendant Wearing. That report made specific "Findings of Fact" which accused the plaintiff, Stephen Coppola, of engaging in criminal activity in connection with the Cusick murder investigation, to wit:

a. "Detective Coppola did not notify the chief, assistant chief, Internal Values & Ethics, North Haven Police or the State's Attorney's Office that this investigation was stopped...

b. Detective Coppola withheld evidence from the North Haven Police Department in the form of statements and photo boards...

c. Detective Coppola physically withheld copies of the Martinez statement and the original photo boards, in his desk, from the North Haven Police and discovery for more than two years... Withholding evidence is illegal in the State of Connecticut."

19. On January 11, 2001, the defendant Wearing, speaking of the investigation into the murder of Philip Cusick, told a reporter for "The New Haven Register" that "it appears that Coppola violated department rules."

20. On January 12, 2001, a written Press Release was distributed to the New Haven area print and media outlets, by and with the approval of the defendant Wearing which announced his intent to discipline the plaintiff, Stephen Coppola, by way of a written reprimand "for violating a departmental General Order concerning the possession of evidence, as well as department rules of conduct concerning the reporting of unlawful activity and the withholding of evidence."

21. In the January 13, 2001 edition of "The New Haven Register," the defendant Wearing repeated his earlier contention that the plaintiff, Stephen Coppola, should be reprimanded because the plaintiff allegedly violated department General Orders by withholding evidence from the North Haven Police Department;

22. Purportedly in reliance upon said "Findings of Fact," the defendant Wearing summoned the plaintiff, Stephen Coppola, to his office on January 15, 2001 and formally issued a written reprimand to the plaintiff, Stephen Coppola, for his alleged "violation of departmental rules governing the withholding of evidence and the obligation to report "any information he has concerning the

violation of any law or ordinance or any matter that should come to the attention of the department." That written reprimand was distributed to the President of the New Haven Board of Police Commissioners, the Assistant Chief of the New Haven Police Department, among others, and a copy was placed in the plaintiff's personnel file.

### C. Count One – 42 U.S.C. § 1983 - First Amendment

1.- 22. Paragraphs 1 through and including 22 of the Sections A and B are incorporated herein as paragraphs 1 through and including 22 of Section C.

23. In reporting his concerns about the possible reasons and motives for the termination of the Cusick murder investigation to the Office of the State's Attorney, as set forth in paragraphs 15 and 17 hereof, the plaintiff was acting in the public interest and within the protection of the First Amendment to the United States Constitution.

24. On January 15, 2001, the defendant Wearing issued an official reprimand to the plaintiff, Stephen Coppola, accusing him of "retaining evidence," "withholding evidence," and "failing to report immediately to his Superior Officer any information he has concerning the violation of any law or ordinance or any matter that should come to the attention of the department."

25. That official reprimand was causally related to the plaintiff's reporting his concerns for the possible reasons and motives for the termination of

the Cusick murder investigation to the Office of the State's Attorney.

26.　The aforementioned conduct of the defendant in wrongfully disciplining the plaintiff, Stephen Coppola, was retaliatory in nature and a violation of the plaintiff's clearly established rights under the First Amendment to the United States Constitution.

27. As a result of the defendant's acts, the plaintiff Stephen Coppola suffered damages, emotional distress, humiliation, mental suffering, injury to his reputation, a decrease in his ability to engage in and enjoy his everyday occupational, social and recreational activities, costs, and attorney's fees.

### D. Count Two – 42 U.S.C. § 1983 – Fourteenth Amendment

1.- 22. Paragraphs 1 through and including 22 of the Sections A and B are incorporated herein as paragraphs 1 through and including 22 of Section D.

23.　The defendants, Melvin Wearing and Bryan Kearney, acting under color of law as Chief of Police and a Police Captain respectively, of the City of New Haven violated the plaintiff's civil rights, under to the Fourteenth Amendment to the United States Constitution.

24. By engaging in the aforementioned acts of accusations and adverse employment actions against the plaintiff, the defendants, Wearing and Kearney acting under color of state law, deprived the plaintiff, Stephen Coppola, of his clearly established federal civil rights secured by Title 42 of the United

9

States Code §1983.

25. The defendants Wearing and Kearney deprived the plaintiff, Stephen Coppola, of a fundamental liberty interest, without due process, by impugning the plaintiff's reputation by reprimanding him for "retaining evidence," "withholding evidence," and "failing to report immediately to his Superior Officer any information he has concerning the violation of any law or ordinance or any matter that should come to the attention of the department" without giving the plaintiff a meaningful opportunity to clear his name. The plaintiff, Stephen Coppola, was deprived of his right to be heard by a body such as the New Haven Board of Police Commissioners which has supervisory authority over the Chief of Police and where he would have been entitled to a full hearing wherein he would have had the right contest the charges against him, confront and cross-examine witnesses and present evidence in his defense.

26. The defendants deprived the plaintiff, Stephen Coppola, of his right to equal protection under the law. The plaintiff was treated differently than other similarly situated individuals, including John Minardi and Keith Wortz, who had reported their concerns to the State's Attorney's Office.

27. As a result of the defendants' acts, the plaintiff Stephen Coppola suffered damages, emotional distress, humiliation, mental suffering, injury to his reputation, a decrease in his ability to engage in and enjoy his everyday

occupational, social and recreational activities, costs, and attorney's fees.

### E. Count Three – Defamation of Character, Slander and/or Libel

1-22. Paragraphs 1-22 of the Sections A and B are incorporated herein as Paragraphs 1-22 of Section E;

23. The "Findings of Fact," that accuse the plaintiff, Stephen Coppola, of criminal activity, as drafted by the defendant Kearney, was false and malicious, and contrary to the testimony and evidence presented;

24. The defendant Kearney made such defamatory statements with actual malice in that he either (a) knew the statements were false, or (b) acted with reckless disregard for the truth of such statements, and with a deliberate indifference to the rights and well-being of the plaintiff.

25. The defendant Kearney was not privileged to make the statements.

26. On its face, the statements in the "Findings of Fact" of the defendant Kearney would, to a person of common and reasonable understanding, expose the plaintiff, Stephen Coppola, to public ridicule, hatred or contempt because they charged the plaintiff with improper conduct, a lack of integrity in his profession as a homicide detective and the crime of withholding evidence.

27. The defendant Kearney has refused to retract the defamatory statements made about the plaintiff notwithstanding the plaintiff's demand to do so.

11

28. As a result of the defendant's acts, the plaintiff Stephen Coppola suffered damages, emotional distress, humiliation, mental suffering, injury to his reputation, a decrease in his ability to engage in and enjoy his everyday occupational, social and recreational activities, costs, and attorney's fees.

29. The written press release, dated January 12, 2001 that accused the plaintiff of:

    a.    violating a departmental general order concerning the possession of evidence;

    b.    violating departmental rules of conduct concerning the reporting of unlawful activity; and

    c.    withholding evidence

was false and malicious and the defendant Wearing made those statements intending that they be published;

30. The written press release, dated January 13, 2001, which accused the plaintiff of violating department General Orders by withholding evidence from the North Haven Police Department was false and malicious and the defendant Wearing made those statements intending that they be published;

31. The statements in the written reprimand, dated January 15, 2001 which alleged that the plaintiff violated:

    a. departmental rules governing the withholding of evidence, and

b. his obligation to report an illegal order to a superior officer

were false and malicious and the defendant Wearing knew that the statements contained therein were false;

32. The defendant Wearing made the defamatory statements on January 11, 12 and 15, 2000 with actual malice in that he either (a) knew the statements were false, or (b) acted with reckless disregard for the truth of such statements, and with a deliberate indifference to the rights and well-being of the plaintiff.

33. The defendant Wearing was not privileged to make the statements.

34. On their face, the statements made by the defendant Wearing would, to a person of common and reasonable understanding, expose the plaintiff, Stephen Coppola, to public ridicule, hatred or contempt because they charged the plaintiff with improper conduct, a lack of integrity in his profession as a homicide detective and the crime of withholding evidence.

35. The defendant Wearing has refused to retract the defamatory statements made about the plaintiff after the plaintiff demanded that he do so.

### F. Count Four – Indemnification by the City of New Haven

1. In the event a Judgment enters in favor of the plaintiff against either of the defendant Wearing or the defendant Kearney, or both of the defendants, the defendant City of New Haven is liable for the aforesaid actions of the defendants Wearing and/or the defendant Kearney pursuant to the provisions of Conn. Gen.

13

Stat. Sec. 7-465.

## M. Prayer

For these reasons, the plaintiff asks for judgment against the defendants, jointly and severally, for:

1. Compensatory damages;

2. Punitive damages pursuant to 42 U.S.C. §1983 which authorizes punitive damages for violations of rights guaranteed by the First, Fifth and Fourteenth Amendments to the United States Constitution;

3. Attorney's fees, pursuant to 42 U.S.C. §§1983 and 1988; and

4. Such other relief, legal and equitable, as may be proper to the ends of justice.

THE PLAINTIFF
STEPHEN G. COPPOLA

By: _____
R. Edward Phillips, Esquire
One Union Plaza, Second Floor
P.O. Box 116
New London, CT 06320
860-444-0437
Fed. Bar #: CT20999

14

## CERTIFICATION

      This is to certify that a copy of the foregoing was mailed on September 26, 2004, to:

Jonathan Beamon, Esquire
Office of the Corporation Counsel
City of New Haven
165 Church Street
New Haven, CT 06510

Rene Gerard Martineau, Esquire
46 South Whittlesey Avenue
P.O. Box 310
Wallingford, CT 06492-0310

Rosemaire Paine, Esqurie
350 Orange Street
P.O. Box 606
New Haven, CT 06503

                                                R. Edward Phillips, Esquire