UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWIN RODRIGUEZ | : |
| , Plaintiff | : |
| | : |
| vs. | : |
| | : |
| THE CITY OF NEW HAVEN, AND IN HIS | : |
| INDIVIDUAL AND OFFICIAL CAPACITY, | : CONSOLIDATED |
| CHIEF OF POLICE, MELVIN H. WEARING | : NO.301 CV592(MRK)(Lead) |
| Defendants | : NO.: 3:01 CV813(MRK)(Member) |
| | : |
| STEPHEN COPPOLA, | : |
| , Plaintiff | : |
| | : |
| vs. | : |
| | : |
| MELVIN WEARING, AND | : |
| THE CITY OF NEW HAVEN | : NOVEMBER 16, 2004 |

## JOINT TRIAL MEMORANDUM

This Joint Trial Memorandum is submitted by the parties for the Court's approval in
compliance with Local Civil Rule 6 and the District's Standing Order Regarding Trial Memoranda
in Civil Cases as modified by Joint -Trial Memorandum - instructions for the Honorable Mark R.
Kravitz (revised 11/03).

1.    **TRIAL COUNSEL:**

    a.    Trial Counsel for Plaintiff, Edwin Rodriguez

        Rosemarie Paine (ct15694)
        JACOBS, GRUDBERG, BELT & DOW, P.C.
        350 Orange Street
        New Haven, Connecticut  06503
        Tel.: (203) 772-3100
        Fax:(203) 772-1691
        Email: rpaine@jacobslaw.com

    b.      Trial Counsel for Plaintiff, Stephen Coppola

           R. Edward Phillips (ct20999)
           Miller & Phillips
           One Union Plaza, 2nd Floor
           New London, CT  06320
           Tel.: (860) 444-0437
           Fax: (860) 443-1354
           Email: attorneyep@justice.com

    c.      Trial Counsel for Defendant City of New Haven and Melvin Wearing

           Jonathan H. Beamon (ct15694)
           Office of the Corporation Counsel
           City of New Haven
           165 Church Street
           New Haven, Connecticut  06510
           Tel.: (203) 946-7966
           Fax: (203) 946-7942
           Email:  jbeamon@newhavenct.net

**2.**    **JURISDICTION:**

**A.**    **Subject matter jurisdiction**

Jurisdiction of this Court is invoked under the provisions of §§ 1331 and 1343(3) of Title 28 of the United States Code.  The plaintiff Rodriguez also invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 with respect to causes of action arising under the laws of the State of Connecticut.

**B.**    **Personal jurisdiction**

Defendant Wearing at all relevant times was a domiciliary of Connecticut working for the City of New Haven.

**3.**    **JURY/NON-JURY:**

This case is to be tried to the jury.

**4.**    **LENGTH OF TRIAL:**

Counsel estimate that five to seven trial days will be required.

**5.**    **FURTHER PROCEEDINGS:**

It is not anticipated that further proceedings prior to trial will be required.

**6.**    **NATURE OF CASE:**

    a.    **Statement of Plaintiff Edwin Rodriguez.**

In the First Count, Plaintiff alleges that defendant Wearing violated the Plaintiff's First Amendment right to free speech when he punished the Plaintiff for speaking to the State's Attorney's office about the Cusick murder investigation, thereby causing the plaintiff harm.

In the second, Plaintiff alleges that defendant Wearing violated the plaintiff's fourteenth amendment right to equal protection when he punished the plaintiff as retaliation for speaking to the State's Attorney's Office about the Cusick murder investigation, thereby causing the plaintiff harm.  The plaintiff and his partner were singled out for punishment of conduct that is normally acceptable conduct in the police department.

In the Third Count, Plaintiff alleges that defendant City of New Haven violated C.G.S. §31-51q when Chief wearing punished the Plaintiff for speaking to the State's Attorney's office about the Cusick murder investigation, thereby causing the plaintiff harm.

**b.**    **Statement of Plaintiff Stephen Coppola.**

The plaintiff claims the defendant Melvin Wearing retaliated against him for speaking to the State's Attorney's Office on the termination of a homicide investigation.  The retaliation was in the form of a written reprimand for violations of departmental policy that were not uniformly and/or routinely enforced.

**c.**    **Statement of Defendants.**

The individual defendants deny the material allegations of the plaintiffs' complaint which allege they acted with deliberate indifference to the plaintiff's rights. The individual defendants, with respect to plaintiffs' 42 U.S.C. 1983 claim, would affirmatively allege that they were governmental employees whose actions were discretionary, and that such actions (1) did not violate any of the plaintiffs clearly established rights under the Constitutional and laws of the United States and/or (2) it was objectively reasonable for them to believe that their actions were not unlawful.

The defendants deny the material allegations of the plaintiffs' complaint which allege that these defendants were negligent.  With respect to this common law negligence claim, the individual defendants would affirmatively allege that they were governmental employees performing a governmental act that required the exercise of judgment and discretion.

**7.**    **TRIAL BY MAGISTRATE JUDGE:**

The parties have not agreed to a trial by a Magistrate Judge.

8.    **EVIDENCE:**

a.    **Witnesses:**

(1)    **Witnesses of Plaintiff Edwin Rodriguez**

The plaintiff Edwin Rodriguez intends to call the following witnesses:

A.    <u>Detective Edwin Rodriguez, Plaintiff.</u>  It is anticipated that he will testify to all of the allegations of the complaint.  More specifically, Edwin Rodriguez will testify to his history of work as a member of the New Haven Police Department prior to his investigation of the Cusick murder investigation, his knowledge of and involvement in the Cusick murder investigation, the stop order concerning the Cusick murder investigation, his response to said stop order, the internal affairs investigation regarding the Cusick murder, his resulting punishment, the press reporting of the Cusick murder and the related stories, and the effect that the incident has had on his life.  His testimony is expected to be approximately 3.0 hours.

B.    <u>Detective Stephen Coppola, Plaintiff.</u>  It is anticipated that he will testify concerning all of the allegations of his complaint and the plaintiff's involvement.  Plaintiff Rodriguez reserves the right to call Detective Coppola to support the Rodriguez case in the unlikely event that Detective Coppola is not called as a witness on his own case.   His testimony is expected to be approximately 2-3 hours.

C.    <u>Sergeant Direk Rodgers</u>.  Sergeant Rodgers was the plaintiff's reporting officer at times relevant to the complaint in 1998-2000.   It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, the stop order concerning the Cusick murder investigation, the plaintiff's response to said stop order, the internal affairs investigation regarding the Cusick murder, the plaintiff's resulting punishment, and instances where others have engaged in similar or identical conduct as the plaintiff and received no punishment the press reporting of the Cusick murder and the related stories, and the effect that the incident has had on the plaintiff's life.  His testimony is expected to be approximately 1.5 hours.

D.    <u>Chief Melvin Wearing, Defendant.</u>  Melvin Wearing was the Chief of police at times relevant to the complaint in 1998-2001.   It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, his knowledge of the plaintiff's involvement in the Cusick murder investigation, the internal affairs investigation regarding the Cusick murder, his decision to punish the plaintiff and his motivations in so doing, the plaintiff's resulting punishment, the press reporting of the Cusick murder and the related stories, and instances where others have engaged in similar or identical conduct as the

plaintiff and received no punishment. His testimony is expected to be approximately 2.5 hours.

      E.    <u>Captain Brian Sullivan</u>.  Brian Sullivan was the plaintiff's superior officer at times relevant to the complaint in 1998-2001.   It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, the stop order given to him by defendant Wearing concerning the Cusick murder investigation, and the internal affairs investigation into the Cusick murder investigation, and instances where others have engaged in similar or identical conduct as the plaintiff and received no punishment.  His testimony is expected to be approximately .75 hours.

      F.    <u>John Minardi</u>.  John Minardi was one of the officers assigned to the internal affairs investigation of the Cusick murder investigation.  It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, the internal affairs investigation regarding the Cusick murder investigation, Chief Wearing's involvement in said investigation, statements made by Chief Wearing during the investigation, and other instances where Chief had threatened or punished others for improper reasons, the plaintiff's resulting punishment, the press reporting of the Cusick murder and the related stories, and instances where others have engaged in similar or identical conduct as the plaintiff and received no punishment.  His testimony is expected to be approximately 1.5 hours.

      G.    <u>Bryan Kearney</u>.  Bryan Kearney was one of the officers assigned to the internal affairs investigation of the Cusick murder investigation.  It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, the internal affairs investigation regarding the Cusick murder investigation, Chief Wearing's involvement in said investigation, statements made by Chief Wearing during the investigation, the plaintiff's resulting punishment, the press reporting of the Cusick murder and the related stories, and instances where others have engaged in similar or identical conduct as the plaintiff and received no punishment.  His testimony is expected to be approximately 1.5 hours.

      H.    <u>Michael Dearington, Attorney</u>.  Attorney Dearington is the State's Attorney for the Judicial District of New Haven.   He is expected he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, conversations the plaintiff had with the States Attorney's Office regarding the Cusick investigation, the internal affairs investigation regarding the Cusick murder investigation, Chief Wearing's involvement in said investigation, statements made by Chief

Wearing during the investigation, the plaintiff's resulting punishment, and his communications with Chief Wearing about the punishment.  His testimony is expected to be approximately .5 hours.

      I.    <u>Daniella Rodriguez</u>.  Daniella Rodriguez is the wife of the plaintiff.  She will testify to her knowledge of the Plaintiff's work history at the NHPD, the effect that the incident has had on the plaintiff and on their marriage.  Her testimony is expected to be approximately .5 hours

      J.    <u>Assistant Chief Norwood.</u>  It is anticipated he will testify as to his knowledge of the Plaintiff's work history at the NHPD, the plaintiff's involvement in the Cusick murder investigation, the internal affairs investigation regarding the Cusick murder investigation, Chief Wearing's involvement in said investigation, statements made by Chief Wearing during the investigation, and other instances where Chief had threatened or punished others for improper reasons, the plaintiff's resulting punishment, and instances where others have engaged in similar or identical conduct as the plaintiff and received no punishment.  His testimony is expected to be approximately .5 hours.

      K.    <u>Inspector Dennis Kelly</u>.  Inspector Kelly is expected to testify about the meeting between himself, the Plaintiff and Coppola in 1998 during which the stop order was questioned and reported to the States Attorney's office.  Also, Kelly will testify as to the instructions that the plaintiff was given from the State's Attorney's Office.  His testimony is expected to be approximately .5 hours.

      L.    <u>Scott Grove, M.D.</u>  Dr. Grove began treating the plaintiff August 27, 2004.  He will testify to his observations and treatment of the plaintiff and specifically how the plaintiff was affected by the workplace actions contained in the complaint.   His testimony is expected to be approximately 1.5 hours.

      M.    <u>Keith Wortz</u>.  Keith Wortz is an officer of the New Haven Police Department.  It is anticipated that he will testify as to his knowledge of the plaintiff's work history at the NHPD and his knowledge of the Cusick investigation.  Statements made by Chief Wearing during the investigation and other instances where the Chief had threatened or punished others for improper reasons, the press reporting of the Cusick murder and the related stories and other instances where others have engaged in similar conduct as the plaintiff and received no punishment.  His testimony is expected to be three quarters of an hour, or .75 hours.

      The plaintiff Edwin Rodriguez may call the following witnesses, but does not expect to do so providing the above listed witnesses are available:

N.      David Spaulding.  Dr. Spaulding treated the plaintiff in 2000 and 2001.  He will testify to his observations and treatment of the plaintiff and specifically how the plaintiff was affected by the workplace actions contained in the complaint.   His testimony is expected to be approximately 1.5 hours.

O.      Officer Knight.  It is anticipated that she will testify as to her knowledge of the effects of the incidents enumerated in plaintiff's complaint on the plaintiff.  Her testimony is expected to be approximately .25 hours.

P.      Sgt. Vellaca.  It is anticipated that he will testify as to her knowledge of the effects of the incidents enumerated in plaintiff's complaint on the plaintiff.  His testimony is expected to be approximately .25 hours.

Q.      Sgt. Mathon.  It is anticipated that he will testify as to her knowledge of the effects of the incidents enumerated in plaintiff's complaint on the plaintiff.  His testimony is expected to be approximately .25 hours.

R.      Detective Pelletier. It is anticipated that he will testify to his knowledge of NHPD procedures for logging in evidence even such as photo boards.

**(2)      Witnesses of Plaintiff, Stephen Coppola**

A.      Stephen G. Coppola, 930 Clinton Road, Westbrook.  Anticipated testimony: details regarding termination of Cusick homicide investigation; statements to State's Attorney's Office; instructions from members of State's Attorney Office; subsequent Internal Affairs Investigation by the New Haven Police Department and statements made by Bryan Kearney of IA division; reprimand by Melvin Wearing; effects of publicity and reprimand. Length of testimony: 1 day at most.

B.      Amanda Coppola, 930 Old Clinton Road, Westbrook; anticipated testimony: her observations of effects of reprimand and publicity on Stephen Coppola. Length of testimony: one-half day at most.

C.      Edwin Rodriguez: 26 Chestnut Court, Cromwell.  Anticipated testimony: details regarding termination of Cusick homicide investigation; statements to State's Attorney's Office; instructions from members of State's Attorney Office; subsequent Internal Affairs Investigation by the New Haven Police Department and statements made by Bryan Kearney of IA division; reprimand by Melvin Wearing; effects of publicity and reprimand. Length of testimony: 1 day at most.

D.    <u>Derek Rogers: New Haven Police Department.</u>  Anticipated testimony: details regarding termination of Cusick homicide investigation; subsequent Internal Affairs Investigation by the New Haven Police Department; reprimand by Melvin Wearing; Length of testimony: 2 hours at most.

E.    <u>Brian Sullivan:  Hamden, CT.</u>  Anticipated testimony: details regarding termination of Cusick homicide investigation and subsequent Internal Affairs Investigation by the New Haven Police Department. It is expected that Mr. Sullivan will testify that it was commonplace for detectives to leave evidence on or in their desk for safekeeping.  Length of testimony: 2 hours at most.

F.    <u>John Minardi: New Haven Police Department.</u>  Anticipated testimony: Melvin Wearing was summoned to Michael Dearington's Office regarding the Cusick homicide and engaged in "damage control"/"hiding the bodies" to reduce his personal liability for the interruption of information to be provided to the North Haven Police Department in their investigation of Cusick homicide; Wearing personally interfered with the performance of the subject New Haven Internal Affairs investigation, arranged the order of witnesses to be interviewed, allowed Brian Sullivan to change his sworn statement, demanded to be notified of the progress, even after being removed from the investigation, and refused to give a statement to IA investigators after Wearing became implicated in the investigation.  Minardi was not surprised to hear that Wearing terminated the Cusick homicide investigation based upon prior similar decisions by Wearing to halt or prevent investigations which Minardi subsequently reported to the State's Attorney's Office.  Minardi is also expected to testify to Wearing's attempts to have Bryan Kearney get information on Minardi to be used against him by Wearing as a means of controlling Minardi.  Minardi was removed from the IA investigation 4 months prior to its conclusion.  Length of testimony: 5 hours at most.

G.    <u>Bryan Kearney: New Haven Police Department.</u>  Anticipated testimony: Melvin Wearing directed the Internal Affairs investigation into termination of the Cusick homicide investigation; Kearney's perception of a conflict with: (a) conducting an IA investigation while the State's Attorney also investigated and/or a Grand Jury probe of the termination of the Cusick homicide investigation, (b) a "gag order" from the State's Attorney's Office on Coppola and Rodriguez and (c) the propriety of Chief Wearing directing an investigation wherein Wearing was implicated; Kearney's review of the Grand Jury's findings; Kearney's Final Report of the IA investigation; and Melvin Wearing's influence/control over Kearney due to Wearing assigning Kearney to IA and also arising from an incident with Denise Blanchard.  Length of testimony: 3 hours at most.

H.    Michael Dearington: State's Attorney's Office, 165 Church Street, New Haven.  Anticipated testimony: Conversations the Melvin Wearing regarding the termination of the Cusick homicide investigation; letters to Melvin Wearing and Thayer Baldwin regarding the internal affairs investigation and reprimands of Coppola and Rodriguez; prior reports of Wearing's involvement in other halted or prevented investigations of New Haven Police Department personnel.  Length of testimony: 2 hours at most.

I.    Denise Blanchard: New Haven Police Department.  Anticipated testimony: Blanchard complained of sexual harassment by Bryan Kearney to Melvin Wearing; Wearing refused to initiate an investigation, which was required, and failed to report the incident to the appropriate offices within the City of New Haven; Blanchard was promoted to Lieutenant and Kearney remained in the same office with Blanchard.  Blanchard is also expected to testify to Wearing's manipulation of the internal affairs investigation conducted by Kearney, Minardi and Blanchard.  Length of testimony:  3 hours at most.

J.    Alberta Norris: New Haven Police Department.  Anticipated testimony:  Ms. Norris transcribed the taped statement of Reynaldo Martinez which was subsequently taken by Edward Kendall; her knowledge of proper procedures regarding the transcription of the taped statement; and she witnessed the sexual harassment of Denise Blanchard by Brian Kearney, she was never questioned or interviewed regarding Denise Blanchard's complaint against Bryan Kearney.  Length of testimony: one hour at most.  (This witness may not be necessary.)

K.    Richard Pelletier: New Haven Police Department.  Anticipated testimony:  On or about April 8, 2002, Detective Pelletier was ordered to remove evidence from Chief Wearing's Office and place it into the evidence locker.  This evidence was related to unsolved homicides that occurred approximately nine (9) years earlier and the taped statements were taken after each homicide.  The evidence was never logged into the evidence locker until Detective Pelletier did so.  No investigations were conducted, charges made or discipline taken related to this evidence sitting in the Chief's Office.  Detective Pelletier is expected to testify that it is commonplace for detectives to leave evidence on or in their desk for safekeeping.  Length of testimony: one hour at most.

L.    John Valecca: New Haven Police Department  Anticipated testimony: Statements by Brian Kearney regarding motives for IA investigation and Kearney's offer to "sell the City down the river" if Coppola would drop his suit against Kearney. Sgt. Valecca is also expected to testify that it is commonplace for detectives to leave evidence on or in their desk for safekeeping.  Length of testimony: 2hours at most.

M.    Melvin Wearing: Office of the Corporation Counsel, City of New Haven.
Anticipated testimony: Wearing will deny terminating the Cusick investigation; in accordance with his deposition testimony Wearing is expected to testify that withholding evidence is a serious violation of Department policy and serious violations are referred to the Board of Police Commissioners for discipline; also in accordance with his deposition testimony, Wearing is expected to testify that he has never withheld evidence or failed to log in evidence; Wearing is expected to admit that he issued or caused to be issued a press release blaming the plaintiff for withholding evidence and failing to report unlawful activity. Length of testimony: 2 hours at most.

N.    Keith Wortz: New Haven Police Department.  Anticipated testimony: His knowledge of the termination of the Cusick homicide investigation and his claim of retaliation against Wearing for reporting these events.  Length of testimony: 2 hours at most.

O.    C. Scott Grove, M.D.: 210 Prospect Street, New Haven, CT.  Anticipated testimony:  The substance of the facts and opinions to which Dr. Grove will testify, will be consistent with documents provided to the defendants herewith, and will include but not be limited to, testimony as to his continued evaluation and treatment of Stephen Coppola.  C. Scott Grove, M.D. is expected to testify that the plaintiff's emotional distress is causally related to the publicized attack on Stephen Coppola's reputation and integrity; the publicized disciplinary actions taken against Stephen Coppola in which he was branded a criminal; the betrayal of Stephen Coppola's coworkers and supervisors which resulted in violations of Stephen Coppola's constitutional rights; and the severe personal, emotional injuries the aforementioned acts have caused.  Dr. Grove is expected to testify based upon his education, experience and training, his diagnosis and treatment of the plaintiff and relevant tests and treatises, including the Diagnostic and Statistical Manual IV (DSM IV), as published by the American Medical Association.     Stephen Coppola suffers from chronic Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSMIV TR No. 309.28) that is causally related solely to the public reprimand and the humiliating attack on his self-esteem.  Coppola suffers from moderate to severe degrees of anxiety and moderate degrees of depression and serious impairment of his sleep.  The use of anti-anxiety and/or anti-depressant medicated has been clearly indicated from the beginning but they were not prescribed because of the legitimate concern they might produce unwanted sedating and cognitive-impairing side effects, neither of which were acceptable given his responsibilities as a detective.  Length of testimony: 3 hours at most.

The plaintiff Stephen G. Coppola reserves the right to call additional witnesses as necessary and for rebuttal purposes.

(3)    **Witnesses of Defendants**

A.    <u>Chief Melvin Wearing.</u>   It is anticipated that he will testify as to his knowledge and/or participation in the events that are enumerated in plaintiff's complaint. His testimony is expected to be approximately 1.5 hours.

The Defendants reserve the right to call any or all of the witnesses listed by the plaintiffs as potential witnesses.

**Objection of Plaintiff Rodriguez.**  The plaintiff objects to the Defendant's reservation of rights to the extent that it does not give the plaintiff adequate notice of the subject matter(s) of that the defendant's intends to elicit in the proposed testimony.

b.    **Exhibits:**

(1)    **Plaintiffs Exhibits.**

1.  Press release dated January 12, 2001 (Joint plaintiffs' exhibit)

2.  Letter of reprimand dated January 15, 2001  (Plaintiff Stephen Coppola)

3.   Letter from Michael Dearington to Melvin Wearing dated January 29, 2001 (Joint plaintiffs' exhibit)

4.  New Haven Register Article dated June 9, 2000 (Joint plaintiffs' exhibit)

5.  New Haven Police Department Evidence Log & Narrative, dated April 8, 2002, by Detective Pelletier (Joint plaintiffs' exhibit)

6.  Opinion by C. Scott Grove M.D. dated January 21, 2002  (Plaintiff Stephen Coppola)

7.  New Haven Police Department, Internal Investigation 034-00-1, dated January 5, 2001 (Joint plaintiffs' exhibit)

8. Internal Memo dated April 27, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

9. Internal Memo dated May 3, 2000 by Brian Kearney (Joint plaintiffs' exhibit)

10. Internal Memo dated May 4, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

11. Internal Memo dated May 10, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

12. Internal Memo dated May 25, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

13. Internal Memo dated May 8, 2000 by John Minardi (Joint plaintiffs' exhibit)

14. Internal Memo dated May 11, 2000 by John Minardi (Joint plaintiffs' exhibit)

15. Arrest Warrant Application by John Minardi against Edward Kendall  (Plaintiff Stephen Coppola)

16. Arrest Warrant Application by John Minardi against Brian Sullivan  (Plaintiff Stephen Coppola)

17. Fax from James Horan to Bryan Kearney dated January 5, 2001  (Plaintiff Stephen Coppola)

18. Fax from Michael Dearington to Ted Baldwin dated November 30, 2000 (Plaintiff Stephen Coppola)

19. Letter from Michael Dearington to Bryan Kearney dated June 1, 2000 (Joint plaintiffs' exhibit)

20. New Haven Register Article dated March 29, 2000 (Joint plaintiffs' exhibit)

21. Internal Memo dated May 3, 2000 by John Minardi (Joint plaintiffs' exhibit)

22. Internal Memo dated May 3, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

23. Internal Memo dated May 24, 2000 by Brian Kearney (Joint plaintiffs' exhibit)

24. Internal Memo dated May 22, 2000 by John Minardi (Joint plaintiffs' exhibit)

25. Notes dated March 19, 2000 by Bryan Kearney (Joint plaintiffs' exhibit)

26. Letter from John Destefano to Bryan Kearney dated June 8, 2000 (Joint plaintiffs' exhibit)

27.  Internal Memo dated July 26, 2000 by Denise Blanchard (Joint Plaintiffs' exhibit)

28.  Internal Memo dated July 26, 2000 by John Minardi (Joint Plaintiffs' exhibit)

29.  Medical costs incurred by the plaintiff for treatment by Dr. Grove (Plaintiff Stephen Coppola)

30.  Letter of Reprimand to Edwin Rodriguez, dated January 15, 2001 (Plaintiff Edwin Rodriguez)

31.  Medical Records/Bills of David Spaulding, LCSW (Plaintiff Edwin Rodriguez)

32.  Medical Records/Bills of Scott Grove, M.D. (Plaintiff Edwin Rodriguez)

**(3)    Exhibits of the Defendants:**

**c.    Objections to Exhibits:**

The defendant has proposed certain that certain transcript portions of the State versus Sullivan which contain testimony of the Plaintiffs trial be made exhibits. The plaintiff Rodriguez objects to their admission.  At this time, defendants have not indicated which pages of the transcript they wish to admit or the reasons therefore.  Generally, said testimony would be hearsay in nature.  Both plaintiffs will testify at trial and will be available for cross-examination. The plaintiff will respond more specifically in the event that the defendants proffer a reason why the transcripts should be admissible.

d.    **<u>DEPOSITION TESTIMONY</u>**

None of the parties expects any witness to testify via deposition at trial.

**9.    STIPULATIONS AND PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW:**

**a. Bench trial:  Not applicable**

**b. Jury trial:  Stipulation of Facts**

The parties agree that the following facts are true:

1.      During all times mentioned in this action, it is alleged that the plaintiffs were detectives in the New Haven Department of Police Service.

2.      The Defendant City of New Haven is a municipal corporation in the State of Connecticut.

3.      That at all times mentioned in plaintiffs' complaint, Chief Wearing was acting under color of law.

4.      From 1998 through 2001, the defendant Mel Wearing was the Chief of the New Haven Department of Police Service.

 5.      On or about November 6, 1996 Phillip Cusick was found shot to death in North Haven, Connecticut.

6.      After Cusick's body was discovered, the North Haven Police began an investigation.

7.      The New Haven Police Department also began an investigation some time after it was discovered that Mr. Cusick had been shot.  At some time after the investigation had begun, the plaintiff Stephen Coppola was assigned to assist in the investigation.

8.      At some time after the investigation was already underway, the plaintiff Edwin Rodriguez assisted with the Cusick murder investigation.

9.      In February, 1998 Coppola and Rodriguez developed evidence that lead to the identification of a possible witness in the Cusick murder, they took a taped statement from this witness and performed the procedure by which the witness could make a photo identification of potential suspects.

10.     In late February or early March of 1998, Coppola and Rodriguez were told by Captain Sullivan to cease the Cusick investigation per order of the Chief.

11.     On or about March 7, 1998, Coppola and Rodriguez met with members of the State's Attorney's Office in order to discuss the stop order.  After speaking with the State's Attorney Office, Coppola placed the photo board into his desk.

12.     Sometime prior to April, 2000 it became public information that Detectives in the New Haven Police Department had developed leads into the Cusick murder and the investigation into the Cusick murder was ordered to be stopped.

13.     In April, 2000 Chief Wearing ordered an internal investigation into the handling of the Cusick case.

14.     On or about January 15, 2001, Chief Wearing issued an official reprimand to Detective Coppola and an official reprimand to Detective Rodriguez for failing to file evidence properly, withholding evidence, and failing to report an illegal order to their superiors.  The plaintiffs' reporting of their concerns to the State's Attorney Office was protected speech.

### c. Proposed Voir Dire Questions

Plaintiff Edwin Rodriguez

1.     This is a lawsuit for civil rights violations brought by Edwin Rodriguez against Melvin Wearing, a retired chief of the New Haven Police Department and the City of New Haven.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.     Is there anyone here who would prefer not to sit on a jury concerning a case of this kind, namely a civil rights case, in which a police officer who is also a private citizen is suing the former head of the New Haven Police Department?

3.      Does anyone here feel for any reason that a person who believes that he has been treated illegally and unfairly should not bring suit against a police officer or police department?  If so, please explain.

4.      Have you or anyone close to you ever been employed as a police officer or by any law enforcement agency in any capacity?  If so, please explain.

5.      Have you or anyone close to you ever been employed by the City of New Haven or any municipality in the State of Connecticut?

6.      Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.      Do you know or have you read anything or heard anything about this case, the Plaintiff or the Defendant or any of the lawyers involved in the case?

8.      Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.      Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.     Has anyone here or any close to you ever been employed by an attorney?

11.     Because the Defendant is a police chief, would you tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.     Other things being equal, would you tend to trust or believe the testimony of a police officer over that of an ordinary citizen merely because the testimony came from a police officer?

13.     Is there any member of this panel who knows any other member of this panel, other than through this jury selection process today?

14.     Have you or anyone close to you ever been the victim of a crime?

15.     Does anyone here belong to any club or organization which in anyway is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.     Have you or anyone close to you ever been arrested?

17.     Have you ever served in a management position at any company or organization?


<u>Plaintiff Steven Coppola</u>

1.      Does anyone know any of the parties, attorneys or their law firms, or witnesses? Please listen as the court reads the list of possible witnesses, and see if you know any of these individuals. If so, please briefly explain the basis of your relationship.

2.      The defendant Melvin Wearing formerly served as a New Haven Chief of Police. Does anyone know or have had any business, social or personal relationship with Mr. Wearing? If so, explain the basis of that relationship? Does anyone know any member or former member of the New Haven Police Department? If so, explain the basis of that relationship.

3.      Has anyone ever had any contact with the defendant Melvin Wearing or his associates on any personal, social or political basis? Has anyone ever worked for, supported

or assisted the Defendant Wearing in any political campaign activities? If so, explain the basis of what you did.

4.     Has anyone or any member of your family ever been the defendant in a civil lawsuit? If so, explain the nature of the suit. Was your case tried or settled? When and where was that lawsuit heard?

5.     Has anyone or any member of your family ever been employed in a capacity as a public official or in public administration, such as in city or county management type work? If so, when and where? Explain the nature of the duties.

6.     Has anyone ever served as any type of elected or appointed government official? If so, when and where? Explain your duties.

7.     Has anyone or a member of your family ever been employed in a personnel or human resources department in either a business or in government? When? Explain what you did.

8.     Has anyone ever owned your own business? How many people did you employ? Did you ever have to fire anyone, and if so, was there a lawsuit or claim made about that incident?

9.     Has anyone read or heard in the news media or otherwise any advertisements or other information from any special interest group regarding civil lawsuits generally? Did what you hear cause you to form any opinion about civil cases generally?

10.     Has anyone ever served as a witness in a trial or a deposition before? If so, when, where, and what type of case?

11.     Has anyone ever been employed as any type of law enforcement officer? If so, when and where were you employed?

12.     Has anyone or any member of your family ever been employed with any

business involved in investigating or resolving accidents, personal injury or property damage claims, or lawsuits? If so, when and where? Explain your duties.

13.     Does anyone have any objection to or disagreement with our present system of civil justice, whereby injured persons recover money damages as compensation?

14.     Would anyone have difficulty in rendering a substantial verdict if the facts support such a substantial verdict? Will you agree to award full compensation for whatever injuries are proven by the evidence?

15.     Do any of you know of any reason why you could not serve as a juror and be fair to all the parties? If so, explain.

16.     Does anyone have any opinions about the validity or appropriateness of constitutional or employment lawsuits generally? Does anyone have any ideas or opinions about this case or this type case? If so, please explain.

17.     Does anyone have any objection to or disagreement with our American system of justice with trial by jury and just compensation for victims?

**d. Proposed Jury Instructions**

<u>(Plaintiff Edwin Rodriquez)</u>

The plaintiff has brought this lawsuit to obtain redress for what he contends were violations of his rights under the United States Constitution, specifically his right guaranteed under the First and Fourt Amendments.  Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that

individual of any of his constitutional rights.  "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, a New Haven police officer.  In this case, the plaintiff has met his burden of proving that the defendant acted under color of law. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

    2.  It is not necessary to find that the defendant had any specific intent to deprive the plaintiff of his civil rights.  The plaintiff is entitled to relief if the defendant intended the actions which resulted in the violation of the plaintiff's rights or if the defendant acted in reckless disregard of the plaintiff's rights.  Reckless disregard of the plaintiff's rights simply means not caring whether or not those rights were being violated.  [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

    3.  If the defendant is found liable to the plaintiff on any of the grounds advanced in this lawsuit, then the question of damages is considered.  There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages.  Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff.  These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering.  In fixing compensatory damages one should determine the amount of money which will, in their judgment, reasonably and

fairly compensate the plaintiff for any harm of any kind which was proximately caused by the

wrongful conduct of the defendants.  Among the elements of injury and harm for which

compensation may be awarded are:

a)  The emotional harm to the plaintiff during and after the impairment or injury received,

including emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety

and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to

suffer in the future;

b)  Attorney fees or other expenses and costs of legal representation;

c)  Medical bills or expenses.

Whenever a constitutional right of the plaintiff has been violated by the defendant, the

plaintiff is entitled to at least nominal damages for that loss.  Nominal damages, however, are

ordinarily fixed in the amount of $10.00.  To support an award of damages in an amount greater than

that, one must find that actual loss was proximately caused by the constitutional violation.  Actual

loss, however, is not limited to expenses or debts incurred.  Injuries of any kind are to be fully and

fairly compensated if they are proximately caused by the constitutional violation. One should award

damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not

simply on the basis of the inherent value of the rights violated.  The damages awarded should be

proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one

of the other types of loss previously mentioned.  [Memphis Community School District v. Stachura,

477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643

F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson

v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304

(1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27

Conn. App. 471, 476, 607 A.2d 443 (1992).]

    4. The plaintiff may also be entitled to the award of any punitive damages.  In a case like this

one, one may consider whether acts or omissions of the defendant, if proven, were so serious that the

defendant should pay a penalty so that in the future others will be deterred from engaging in the

same conduct.  An award of punitive damages should be based on whether it is found that the

defendant engaged in any one of the following things:

    1)  Willful or malicious violation of the constitutional rights of the plaintiff;

    2)  Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

    3)  Reckless disregard by the defendant of whether or not he was violating the rights of the

plaintiff.

    If any one of these three things is proven, punitive damages should be awarded.  [Smith v.

Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v.

Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989);

Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d

665, 670-73 (11th Cir. 1990).]

    5.  The purpose of punitive damages awards is both punishment and deterrence, and in

deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury

acts as the conscience of the community.  In fixing the amount of punitive damages, it is appropriate

for the jury to consider all of the same factors which a trial judge would consider in imposing

sentence in a criminal case.  These factors include the behavior of the defendant at trial and his

apparent lack of genuine repentance for the misconduct in question.  [Hall v. Ochs, 817 F.2d 920

(1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v.

Krzeminski, 839 F.2d 9 (2d Cir. 1988);  Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

     6.  Conduct of a defendant, including statements knowingly made and acts knowingly done

after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the

case in determining whether or not the defendant has acted wrongfully.  When a defendant

voluntarily and intentionally offers an explanation, or makes some statement tending to show his

innocence, and this explanation or statement is later shown to be false, the jury may consider

whether this circumstantial evidence points to a consciousness of wrongdoing.  Ordinarily, it is

reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an

explanation or statement tending to establish his innocence.  Whether or not evidence as to a

defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a

consciousness of guilt, and the significance to be attached to any such evidence, are matters

exclusively within the province of the jury.  A statement or act is "knowingly" done, it made or done

voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

[Fernandez v.  Fitzgerald, 711 F.2d 485 (2d. Circ. 1983);  United v. McDougald, 650 F.2d 532 (4th

Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States

v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976);

Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-21

(1896); United States v. DeAlesandro, 361 F.2d 694, 697-98 (2d Cir. 1966), cert. denied, 385 U.S. 842 (1967).]

7.  If it is found that any of the defendant not only made a false statement or explanation tending to show his innocence, but has made that statement to a law enforcement officer, then that may be considered to be evidence not only of the defendant's consciousness of his own wrongdoing but independent evidence that in fact he did violate the plaintiff' rights in the manner alleged in the Complaint.  False exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force.  In other words, if it is found that the defendant has knowingly made a false statement to a law enforcement officer, which if true would have tended to establish the innocence of the defendant, that false statement may be considered as independent evidence that the defendant actually committed the constitutional violation alleged in the Complaint. [United States v. Durrani, 835 F.2d 410, 424 (2d Cir. 1987).]


(Plaintiff Stephen Coppola)

In this case the Plaintiff claims that the Defendant, while acting "under color" of state law, intentionally deprived the Plaintiff of the Plaintiff's rights under the Constitution of the United States.  Specifically, the Plaintiff claims that while the Defendant was acting under color of authority of the State of Connecticut, City of New Haven when he intentionally violated the Plaintiff's constitutional rights under the First Amendment to the Constitution when the Defendant disciplined the Plaintiff because of the Plaintiff's exercise of the right of free speech. The Defendant denies that he violated the Plaintiff's rights in any way.

Under the First Amendment to the Constitution of the United States, every public employee has the right to "freedom of speech" addressing issues of public concern.  In this case, therefore, if you find that the Plaintiff engaged in speech activity concerning the termination of a homicide investigation, you are instructed that the subject of such speech activity was a matter of public concern; and, as a public employee, the Plaintiff could not legally be penalized because of the Plaintiff's exercise of First Amendment rights in discussing that subject of public concern.

The law further provides that a person may sue in this Court for an award of money damages against anyone who, "under color" of any state law or custom, intentionally violates the Plaintiff's rights under the Constitution of the United States.

In order to prevail on this claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the actions of the Defendant were "under color" of the authority of the State of Connecticut;

Second: That the Plaintiff engaged in speech activity concerning the termination of a homicide investigation;

Third: That such speech activity was a substantial or motivating factor in the defendant's decision to discipline; and

Fourth: That the Defendant's acts were the proximate or legal cause of damages sustained by the Plaintiff.  Mt. Healthy City Sch. District Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Goss v. San Jacinto Jr. College, 588 F.2d 96 (5th

Cir.), rehearing granted, 593 F.2d 23, judgment modified, 595 F.2d 1119 (1979); Gooden v. Neal, 17 F.3d 925, 928 (7th Cir.), cert. denied, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

A state or local official acts "under color" of the authority of the state not only when the official acts within the limits of lawful authority, but also when the official acts without or beyond the bounds of lawful authority. In order for unlawful acts of an official to be done "under color" of state law, however, the unlawful acts must be done while the official is purporting or pretending to act in the performance of official duty; that is, the unlawful acts must be an abuse or misuse of power which is possessed by the official only because of the position held by the official. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)

You should be mindful that the law applicable to this case requires only that a public employer refrain from taking action against a public employee because of the employee's exercise of protected First Amendment rights. So far as you are concerned in this case, a public employer may discipline a public employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of the Defendants even though you personally may not approve of the action taken and would have acted differently under the circumstances. Neither does the law require that a public employer extend any special or favorable treatment to public employees because of their exercise of protected First Amendment rights.

On the other hand, in order to prove that the Plaintiff's protected speech activities were a "substantial or motivating" factor in the Defendants' decision, the Plaintiff does not have to prove that

the protected speech activities were the only reason the Defendants acted against the Plaintiff. It is sufficient if the Plaintiff proves that the Plaintiff's protected speech activities were a determinative consideration that made a difference in the Defendants' adverse employment decision. Mt. Healthy City School Dist. Bd. Of Ed. v. Doyle, 429 U.S. 274,97 S.Ct. 568, 50 L.Ed.2d 471 (1977)

(Defendants)

**I.**

The plaintiff's federal claims are brought under a section of the federal law, 42 U.S.C. §1983, known as the Civil Rights Act.  This statute, which I will refer to as "Section 1983" allows lawsuits to be brought for money damages when a person, acting under the color of state law, deprives another person or corporation, of constitutional or federal rights.  Specifically, Section 1983 provides that:

> Every person who, under color of any statute…of any State…subjects or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

To establish his claims under Section 1983, the plaintiffs must prove the following three elements by a preponderance of the evidence:

(1)    that the defendant, Melvin Wearing, acted under color of state law;

(2)    that the conduct of the defendant deprived the plaintiffs of rights secured by the Constitution of the United States; and

(3)    that the actions of the defendant were the proximate cause of the plaintiffs' injuries and damages.

The first element that the plaintiffs must prove is that the defendant was acting under color of Connecticut state law. Both sides agree that at the times of the incidents alleged in plaintiff's complaint, the defendant was acting in his capacity as a police officer with the New Haven Department of Police Service, and therefore, he was acting under color of state law. Since this element is not in dispute, you do not need to consider it.

So, each must prove that the defendant deprived him of a constitutional right, and that such conduct proximately caused his injuries and damages. In a moment, I will explain each of these elements in greater detail, but I first want to explain that it is not necessary to find that the defendant had any specific intent to deprive the plaintiff of his constitutional rights in order for you to find for the plaintiff. Each plaintiff is entitled to relief if the defendant Melvin Wearing intended to perform the actions that resulted in a violation of their rights, if you so find their rights have been violated. The plaintiffs are entitled to relief if you find that the defendant acted with a reckless disregard of the plaintiff's rights. Reckless disregard of a plaintiff's rights means not caring whether or not those rights were being violated. However, if a defendant acted negligently, mistakenly, or inadvertently, then he cannot be said to have violated plaintiff's rights. Thus, if you determine that a defendant acted negligently, mistakenly, or inadvertently, even if you find that the plaintiff was injured as a result of those actions, you must find for that defendant.

**Authority:**

Section 1983 Litigation:  Jury Instructions, Vol. 4, Instruction 3.01.1, p. 3-3;
Schwartz and Pratt.

Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 c., pp.1065-1066; Wright
and Ankerman.

Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).

Section 1983 Litigation: Jury Instructions, Vol. 4, Instruction 3.01.1, pp. 3-4 and   3-5;
Schwartz and Pratt.

Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 f., h. and i.; Wright and
Ankerman.

Connecticut Jury Instructions (Civil), Fourth Edition, Section 690 j. and k., pp. 1067 and
1068; Wright and Ankerman.

Brower v. County of Inyo, 489 U.S. 593, 596 (1989).

This is essentially the same instruction given by the Hon. William I. Garfinkel, Magistrate
Judge, in Schapperoew v. Consiglio, Civil Action No. 3:98cv678 (WIG).

## II.

The plaintiffs claim that the actions of the defendant denied each plaintiff due process of law.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no

person shall be denied equal protection of the laws.  Generally speaking, this means that state actors

such as the defendant are to treat similarly situated people alike, and that people have a right to be

free from invidious discrimination in statutory classifications and governmental actions.   The

plaintiff, in order to establish an Equal Protection violation, must prove by a preponderance of the

evidence that he was selectively treated by the defendant compared with others similarly situated,

and that such selective treatment resulted from impermissible considerations such as race, religion,

an intent to inhibit or punish the exercise of constitutional rights, or a malicious or bad faith intent to injure.  If the plaintiff fails to meet this burden, then you must find for the defendant.

Authority:

> City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)
>
> Harris v. McRae, 448 U.S. 297, 322    (1980)
>
> Crowley v. Courville, 76 F.3d 45, 52 (2d. Cir. 1996)
>
> FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2d. Cir. 1992)

## PLAINTIFF RODRIGUEZ' OBJECTIONS TO DEFENDANT JURY INSTRUCTIONS

The plaintiff has no objection to the defendants' proposed instructions on selective prosecution.

The plaintiff objects to Jury Instruction regarding qualified immunity.  For the jury to the defense of qualified immunity, the jury will have already  have found all of the elements of the plaintiff's allegations as to Count I and  II in his Complaint (where qualified immunity would be a defense), the jury will have necessarily found that Chief Wearing acted with an improper motive. Therefore, the defense of qualified immunity would not apply as the defendant would not be entitled to qualified immunity under those circumstances.

The Court, in its earlier ruling on summary judgment, stated:

## SPECIAL INTERROGATORIES TO THE JURY

Special interrogatories are not being requested by Plaintiff Rodirguez or the Defendants.  The following is from Plaintiff Stephen Coppola:

Do you find from a preponderance of the evidence:

1.  That the actions of the Defendant were "under color" of the authority of the State?

    Answer Yes or No _____]

2. That the Plaintiff engaged in speech activity concerning the termination of a homicide investigation?

    Answer Yes or No _____

3. That such speech activity was a substantial or motivating factor in the Defendant's decision to discipline the Plaintiff?

    Answer Yes or No _____

4. That the Defendant's acts were the proximate or legal cause of damages sustained by the Plaintiff?

    Answer Yes or No _____

[Note: If you answered No to any of the preceding questions you need not answer any of the remaining questions.]

5. That the Plaintiff would have been disciplined for other reasons even in the absence of the Plaintiff's protected speech activity?

    Answer Yes or No _____

[Note: If you answered Yes to Question No. 4 you need not answer the remaining questions.]

6. That the Plaintiff should be awarded damages to compensate for emotional pain and mental anguish?

    Answer Yes or No _____

If your answer is Yes, in what amount? $_____

7. That the Defendant acted with malice or reckless indifference to the Plaintiff's federally protected rights and that punitive damages should be assessed against the Defendant?

    Answer Yes or No _____

If your answer is Yes, in what amount? $_____

SO SAY WE ALL.

_____

Foreperson

DATED: _____

**e. Proposed verdict form**

Plaintiff Rodriguez v. Defendant Wearing

Count I:  First Amendment – Civil Rights

We, the jury find in favor of

_____   Plaintiff Rodriguez

_____   Defendant Wearing

Count II:  Selective Prosecution Civil Rights

_____   Plaintiff Rodriguez

_____   Defendant Wearing

Count III: 31-51q State Claim

We, the jury find in favor of

_____ Plaintiff Rodriguez

_____ Defendant City of New Haven

If you find in favor of the Plaintiff on any count pleases proceed to the next questions or damages. If you have found for the defendants on all counts, please sign and date of the verdict form.

Damages

We the jury find damages as follows:

Economic

___ Please indicate amount

Noneconomic

___ Please indicate amount

Nominal

_____ Please indicate amount

Punitive  (As to Defendant Wearing)

_____ Please indicate amount

Punitive as to the City of New Haven

Please do not include an amount, check Yes or No only.

_____ Yes

_____ No

<u>Plaintiff Coppola</u>

On the First Amendment retaliation claim of plaintiff Coppola, we find in favor of (check one)

[ ] Plaintiff Coppola or

[ ] Defendant Melvin Wearing.

Note: Complete the following paragraphs only if the above finding is in favor of plaintiff Coppola. If the above finding is in favor of defendant Wearing, have your foreperson sign and date this form because you have completed your deliberation on this claim.

We find plaintiff's damages as defined to be:

$_____ (stating the amount or, if none, write the word "none") (stating the amount, or if you find that plaintiff's damages have no monetary value, set forth a nominal amount such as $1.00).

We assess punitive damages against defendant Wearing as follows:

$_____ (stating the amount or, if none, write the word "none").


(11) <u>Objections</u>:

    (a) <u>Trial to Court</u>: not applicable

    (b) <u>Trial to Jury</u>:  none


## 10.    ANTICIPATED EVIDENTIARY PROBLEMS

At this time, there are no anticipated evidentiary problems.

THE PLAINTIFF,
EDWIN RODRIGUEZ


By /s/ Rosemarie Paine
        Rosemarie Paine (ct 15694)
        JACOBS, GRUDBERG, BELT & DOW, P.C.
        350 Orange Street
        New Haven, CT  06503
        Tel.:(203) 772-3100
        Fax:(203) 772-1691
        Email: rpaine@jacobslaw.com



THE PLAINTIFF,
STEPHEN COPPOLA


By_____
        R. Edward Phillips (ct20999)
        Miller & Phillips
        One Union Plaza, 2nd Floor
        New London, CT  06320
        Tel.: (860) 444-0437
        Fax: (860) 443-1354
        Email: attorneyep@justice.com


THE DEFENDANTS


By_____
        Jonathan H. Beamon (ct22937)
        Office of the Corporation Counsel
        City of New Haven
        165 Church Street
        New Haven, Connecticut  06510
        Tel.: (203) 946-7966
        Fax: (203) 946-7942